IDAHO FIRST NATIONAL BANK;
Moore Financial Group, Inc.,
Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellant.

No. 91–70697.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 1993.

Decided June 24, 1993.

Order Clarifying Decision Aug. 4, 1993.

1286

Gary R. Allen and Joan I. Oppenheimer, Dept. of Justice Tax Div., Washington, DC, for respondent-appellant.

Robert J. Jones, Steven P. Lockman, Robert P. Hanson, and L. Hope O'Keeffe, Arnold & Porter, Washington, DC, for petitioners-appellees.

Before: HUG, GOODWIN, and FLETCHER, Circuit Judges.

PER CURIAM:

Respondent-appellant Commissioner of Internal Revenue ("Commissioner") appeals a tax court decision construing 26 C.F.R. § 1.1502–15(a)(2) (1992) in favor of petitioner-appellees Moore Financial Group, Inc. and Idaho First National Bank (collectively, "petitioners"). Petitioners filed consolidated federal tax returns in which they offset losses of an acquired corporation against other consolidation group members' taxable income. We reverse.

## I. Jurisdiction

The tax court had jurisdiction over the petitions for redetermination of deficiencies brought by Moore Financial Group, Inc. ("Moore Financial")[1] and Idaho First National Bank ("Idaho FNB")[2] pursuant to 26 U.S.C. §§ 6213, 7442 (1988). We have jurisdiction under 26 U.S.C. § 7482(a) (1988); the notices of appeal were timely filed by the Commissioner on November 8, 1991 from decisions entered August 16, 1991. *Id.* § 7483 (1988) (permitting ninety days to file

---

1. Moore Financial changed its name to WestOne Bancorp in 1989, but will be referred to as Moore Financial in this opinion.

2. Idaho FNB is now known as WestOne Bank—Idaho. As with Moore Financial, it will be referred to in this opinion by its former name.

notice of appeal). Venue is proper in the Ninth Circuit because both petitioners maintained their principal places of business in Boise, Idaho at the time they filed their petitions with the tax court. *Id.* § 7482(b)(1)(B).

## II. Facts

Moore Financial is a regional bank holding company formed in 1981. One of its subsidiaries is Idaho FNB. Several years ago, Moore Financial decided, as part of its long-term strategic business plan for expanding its holdings throughout the Pacific Northwest, to acquire a bank in Oregon as its first move toward expansion. Regulatory constraints, however, prevented it from acquiring a solvent institution.

In July 1983, the Federal Deposit Insurance Corporation ("FDIC"), working with Oregon state banking officials, solicited bids for the acquisition of Oregon Mutual Savings Bank ("OMSB"), an insolvent Portland-area institution with thirteen branch locations. The FDIC accepted Moore Financial's bid, and the transaction was approved by state banking officials shortly thereafter. On August 5, 1983, OMSB was converted from a mutual savings bank to a state-chartered stock bank and renamed Oregon First Bank ("OFB").[3] At that point it became a member of the Moore Financial consolidated return group for federal income tax purposes.

Certain of OFB's investment assets, real estate loans, and mortgages were sold to third parties in 1983, 1984 and 1985. As further stipulated by the parties:

These sales resulted in tax losses of $2,601,108 in 1983, $6,481,259 in 1984, and $17,614,696 in 1985 that Moore Financial claimed on its 1984 and 1985 consolidated

tax returns and in amended consolidated returns for the years 1981–1983 and that Idaho [FNB] claimed in an amended consolidated return for the year 1980.

The parties agree that Moore Financial's acquisition of OFB was not made with the principal purpose of avoiding federal income tax. The disagreement is as to whether OFB's losses can be deducted against the consolidated income of the group or only against OFB's earnings. The Commissioner determined that the tax losses on these sales of assets could be used only to offset OFB's taxable income, and could not be used to offset the taxable income of the Moore Financial consolidated return group. This would result in approximately $3.6 million in deficiencies for calendar years 1981, 1983, 1984, and 1985, plus more than $860,000 in 26 U.S.C. § 6661 (1988) additions.[4] Idaho FNB would owe $976,837 for calendar year 1980.

The tax court disagreed with the Commissioner and found no deficiencies.[5] The Commissioner now appeals.

## III. Analysis

■ We review de novo the tax court's interpretation of a Treasury Regulation. *Cheng v. C.I.R.,* 938 F.2d 141, 143 (9th Cir. 1991). However, the court's findings of fact stand unless clearly erroneous. *Brooker v. Desert Hosp. Corp.,* 947 F.2d 412, 415 (9th Cir.1991); *Kinsey v. C.I.R.,* 859 F.2d 1361, 1362 (9th Cir.1988) ("We review decisions of the Tax Court on the same basis as District Court decisions in civil bench trials."), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989).

---

**3.** OFB has since been renamed WestOne Bank— Oregon.

**4.** The precise breakdown is as follows:

| Taxable Year | Tax Deficiency | § 6661 Additions |
| --- | --- | --- |
| 1981 | $ 181,469 | ----------- |
| 1983 | 22,105 | $ 5,526 |
| 1984 | 2,528,808 | 632,202 |
| 1985 | 907,991 | 226,998 |
| TOTAL | $3,640,373 | $864,726 |

**5.** In addition to the opinion published in the United States Tax Courts Reports, *Idaho First National Bank v. C.I.R.,* 95 T.C. 185, 1990 WL 121141 (1990), the tax court entered separate decisions finding no federal income tax deficiencies due from either Moore Financial or Idaho FNB for the years at issue.

■ This case presents an issue of first impression. We must decide "whether certain losses incurred in disposing of assets acquired from an insolvent bank are built-in deductions or are losses incurred in rehabilitating the acquired bank within the meaning of [Treas.Reg. § ]1.1502–15(a)(2)." *Idaho First Nat'l Bank v. C.I.R.*, 95 T.C. 185, 186, 1990 WL 121141 (1990). If the losses are "built-in deductions," Moore Financial and Idaho FNB owe tax deficiencies. If they are "rehabilitation losses," as held by the tax court, Moore Financial and Idaho FNB owe nothing.

■ Treas.Reg. § 1.1502–15(a) is part of the extremely complex array of technical, closely-interrelated rules governing consolidated tax returns. These rules consume nearly 260 pages in the Code of Federal Regulations. *See* 26 C.F.R. §§ 1.1501–1 to 1.1564–1 (1992). Section 1.1502–15(a)(1) sets forth the general rule regarding "[l]imitations on certain deductions." Generally speaking, the rule limits a consolidated group's ability to offset the built-in deductions of one group member against the income of other members. Put a different way, a built-in deduction ordinarily cannot be used to offset the income of any member of a consolidated group other than that of the member generating the losses.[6]

Section 1.1502–15(a)(2) defines "built-in deductions" as

> those deductions or losses of a corporation which are recognized in such year, or which are recognized in a separate return year and carried over in the form of a net operating or net capital loss to such year, but which are economically accrued in a separate return limitation year (as defined in § 1.1502–1(f)). *Such term does not in-*

*clude deductions or losses incurred in rehabilitating such corporation.*

26 C.F.R. § 1.1502–15(a)(2) (1992) (emphasis added).

Interpreting the regulation "as written," the tax court ruled that the structure of § 1.1502–15(a)(2) "gives meaning to the second sentence, to wit, built-in deductions do not include losses economically accrued in a separate return limitations year if such losses are rehabilitation losses." *Idaho First Nat'l Bank*, 95 T.C. at 192. The court held that Moore Financial and Idaho FNB were "entitled to rely on the regulation as written, that losses incurred in rehabilitating a corporation are not built-in deductions, and that the losses in issue were incurred in rehabilitating a corporation." *Idaho First Nat'l Bank*, 95 T.C. at 193.

The Commissioner does not dispute that Moore Financial's sale of certain of OFB's depreciated assets was motivated by a "rehabilitative purpose." Nevertheless, the Commissioner argues that in addition to having a rehabilitative purpose, the loss must result from post-acquisition economic investment for the loss to be one incurred in rehabilitating the corporation within the meaning of the regulations. Because the loss sustained on the sale of assets is entirely attributable to a loss economically sustained prior to affiliation, and not a loss attributable to, for example, a cash outlay subsequent to affiliation, the losses from the sale of OFB assets are built-in deductions, not rehabilitation losses.

Moore Financial and Idaho FNB maintain that the regulatory language is unambiguous and straightforward: "deductions or losses incurred in rehabilitating such corporation" are not "built-in deductions." They argue

---

6. In relevant part, § 1.1502–15(a)(1) provides that:

Built-in deductions (as defined in subparagraph (2) of this paragraph) for a taxable year shall be subject to the limitation of § 1.1502–21(c) (determined without regard to such deductions and without regard to net operating loss carryovers to such year) and the limitation of § 1.1502–22(c) (determined without regard to such deductions and without regard to capital loss carryovers to such year). If as a result of applying such limitations, built-in deductions are not allowable in such consolidated

return year, such deductions shall be treated as a net operating loss or net capital loss (as the case may be) sustained in such year and shall be carried to those taxable years (consolidated or separate) to which a consolidated net operating loss or a consolidated net capital loss could be carried under §§ 1.1502–21, 1.1502–22, and 1.1502–79, except that such losses shall be treated as losses subject to the limitations contained in § 1.1502–21(c) or § 1.1502–22(c) (as the case may be).

26 C.F.R. § 1.1502–15(a)(1).

that normal principles of statutory construction should be applied to the consolidated return regulations. These "legislative regulations"[7] must be accorded their plain meaning "where the language selected by the drafters is clear and unequivocal." *KCMC, Inc. v. FCC*, 600 F.2d 546, 549 (5th Cir.1979).

■ It is axiomatic that "[t]he task of resolving [a] dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Petitioners insist that this case is an easy one, and that where a statutory language inquiry reveals plain language, " 'the sole function of the courts is to enforce it according to its terms.' " *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Nothing about the sentence "[s]uch term does not include deductions or losses incurred in rehabilitating such corporation," they argue, is in the least confusing.[8] Thus, if the language in the second sentence of § 1.1502–15(a)(2) is unambiguous, and its literal application does not conflict with the intentions of its drafters, the plain meaning should prevail. *Id.* 489 U.S. at 242, 109 S.Ct. at 1030 (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

The Commissioner argues that the history of and policy behind § 1.1502–15(a)(2) supports her interpretation of the regulation. Although consolidated returns reflect economic reality (corporations with common ownership comprise one business owned by the same individuals, and should be taxed accordingly), abuse of the consolidated return format is a significant concern. Thus, § 1.1502–15 is designed to prevent the use of consolidated returns for tax avoidance—to interdict, as petitioners put it, the practice of trafficking in loss corporations, i.e., tax-motivated purchases by profitable corporations of corporations with built-in or carryover losses. *See Wolter Constr. Co. v. C.I.R.*, 634 F.2d 1029, 1037 (6th Cir.1980) (consolidated return regulations "designed to prevent 'trafficking' in loss corporations").

Although the acquisition of OFB was not made with the principal purpose of avoiding federal income tax, we agree with the Commissioner that Treas.Reg. § 1.1502–15(a)(2) should not be read to allow the acquiring group to take advantage of losses resulting from the financial failures of the acquired corporation prior to acquisition. Prior to its 1973 amendment, the second sentence of § 1.1502–15(a)(2) read: "Such term does not include deductions or losses incurred both economically and taxwise in a year which is not a separate return limitation year, including those deductions and losses incurred in rehabilitating such corporation." 26 C.F.R. § 1.1502–15(a)(2) (1972). The Commissioner maintains that the regulatory phrase "deductions and losses incurred in rehabilitating such corporation" was intended to make it clear that when a parent acquiring a financially-troubled subsidiary incurs additional expenditures in attempting to rehabilitate that company, additional losses resulting from these expenditures are not built-in deductions. We agree. The 1973 change, paring down and simplifying the language of the second sentence, was, as the Commissioner asserts, simply a technical correction intended to eliminate language considered redundant.

The Commissioner also argues persuasively that the tax court's ruling emasculates the limitation on the use of built-in deductions or losses as offsets against the income of other members of the consolidated return group.

<hr>

**7.** Congress has expressly delegated legislative authority for the promulgation of consolidated tax return regulations to the Secretary of the Treasury. 26 U.S.C. § 1502 (1988); *Union Elec. Co. v. United States*, 305 F.2d 850, 854, 158 Ct.Cl. 479 (1962) (Secretary's consolidated return regulations, "unlike ordinary Treasury Regulations, are legislative in character and have the force and effect of law.").

**8.** The Commissioner's position would be supported by the regulation, they argue, if the second sentence in § 1.1502–15(a)(2) read "Such term does not include deductions or losses incurred in rehabilitating such corporation, but only if and to the extent that such deductions or losses are directly attributable to additional economic investments in such corporation made by the acquiring corporation subsequent to the date of acquisition."

Every acquiring company could argue that its purchase of a financially troubled company was for rehabilitative purposes, thereby circumventing the safeguards against the use of consolidated returns for tax avoidance purposes.

The Commissioner correctly points out that § 1.1502–15(a)(2)'s second sentence is not as unambiguous as petitioners claim it is, and offers as proof the conclusion of one set of commentators that losses like those in this case are not rehabilitation losses. *See* Jack Crestol et al., *The Consolidated Tax Return* ¶ 5.03[1], at 5–76 n. 212 (4th ed.1988) [hereinafter Crestol's Tax Return]. These commentators agree with General Counsel Memorandum (GCM) 38,864 (May 24, 1982), 1982 IRS GCM LEXIS 47 (LEXIS, Fedtax library, GCM file) (available on WESTLAW, FTX-GCM database) that

> if an affiliated group acquired a bank with an unrealized depreciated securities portfolio and attempted to rehabilitate the bank by selling the securities at a loss and investing in higher grade securities, the losses could only be deducted in accordance with the built-in deduction limitations.

*Id.* (citing GCM 38,864).

■ Although GCMs are not controlling, *Somerville v. United States,* 13 Cl.Ct. 287, 292 (1987) (GCMs "are merely internal documents and do not have the force of law"), some deference may be due the Commissioner's legal opinion, at least to the extent that it demonstrates a considered and consistent position. Perhaps more important, we find the Commissioner's position to be more sound than petitioners':

> the "exception" for rehabilitating losses was actually intended to restrict built-in deductions to those which were economically accrued before affiliation but recognized for tax purposes after affiliation, and prevent any expansion of the definition to deductions and losses incurred economically and for tax purposes after affiliation, even though it was clear before affiliation that such deductions and losses would arise after affiliation.

GCM 38,864, 1982 IRS GCM LEXIS 47 at *10. We conclude that petitioners' deductions here were "built-in" rather than rehabilitative, and cannot be offset against other consolidation group members' taxable income.

REVERSED.

## ORDER CLARIFYING DECISION

August 4, 1993

Pursuant to *Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700 (9th Cir.1976), we clarify that our decision is an "open reversal" and does not foreclose the tax court from "hear[ing] and ... decid[ing] any issues heretofore or hereafter properly presented to [it] which we did not decide." *See Heinicke Instruments,* 543 F.2d at 703.