**CHICAGO MILWAUKEE CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

**No. 92-462T.**

United States Court of Federal Claims.

Nov. 8, 1993.

Larry D. Blust, Chicago, IL, for plaintiff.

George L. Squires, Washington, DC, with whom was Acting Asst. Atty. General Michael L. Paup, for defendant.

## OPINION

### REGINALD W. GIBSON, Judge:

#### INTRODUCTION

The merits of this case relate to plaintiff's suit to recover employment taxes imposed by the Railroad Retirement Tax Act[1] ("RRTA") which were, allegedly, overpaid.[2] However, presently before the court is defendant's motion to dismiss the amended complaint for lack of subject matter juris-

1. 26 U.S.C. § 3201 imposes a tax on every employee for income received for services rendered during the calendar year. 26 U.S.C. § 3221 imposes a similar tax on employers based on compensation paid to employees for services rendered during the calendar year.

2. In its amended complaint, taxpayer demands refunds for both the alleged overpaid employer's portion of the tax and the employees' portion which was withheld from the employees' gross pay and submitted to the IRS on their behalf.

3. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (allegations in the complaint should be construed favorably to

diction or, alternatively, for failure to state a claim upon which relief can be granted under RCFC 12(b)(1) and (4), respectively. The government asserts as a basis for its motion taxpayer's non-compliance with applicable Treasury regulations in its administrative refund claims by failing to either reimburse its former employees or secure their written consent to allowance of the refund prior to filing the claim. Defendant argues that such compliance is a prerequisite to a tax refund suit, the lack of which is fatal in that it deprives any federal court of subject matter jurisdiction to hear the case. Conversely, plaintiff argues that such compliance is not required and, in any case, should not bar this particular suit based on its facts. For the reasons discussed below, defendant's motion to dismiss is hereby granted.

#### FACTS

Because the operative facts are essentially undisputed and must, in any event, be taken as true as alleged by the *non* moving party in a motion to dismiss,[3] the pertinent facts are, therefore, ascertained for the most part from plaintiff's amended complaint.[4]

On December 9, 1977, Chicago, Milwaukee, St. Paul and Pacific Railroad Company ("Railroad") entered into reorganization proceedings in the United States District Court for the Northern District of Illinois, Eastern Division, and a trustee was appointed by that court to operate it. Subsequently, the trustee, on behalf of Railroad,

the pleader); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

4. In its motion to dismiss and brief in support, defendant annexed and relied on materials referred to in plaintiff's complaint in support of its allegations. As decision may be reached here on the pleadings alone, it is unnecessary to convert the government's motion into one for summary judgment under RCFC 56. Accordingly, as impliedly permitted by RCFC 12(b) and (c), such materials are excluded from consideration here.

entered into a labor agreement on or about January 29, 1982, with the various unions representing employees of Railroad, which had been approved by the district court. Under the plan, the employees were to receive a percentage of any profit realized by Railroad upon sale of the company's assets, if and when such a sale occurred, in reimbursement for the wage reduction agreement.

Following thereafter, on February 19, 1985, the district court approved the Asset Purchase Agreement ("APA") between the trustee, on behalf of Railroad, and the Soo Line Railroad Company and its affiliate, SLRCO, Inc. (hereinafter collectively referred to as "Soo"). The district court's order also provided that all common carrier obligations would be assumed by Soo and cease as to the trustee and the debtor, Railroad, upon consummation of the transaction, which occurred that day. As a result of the order and sale, virtually all of the employees of the trustee and Railroad became employees of Soo. The trustee paid all wages accruing prior to the sale date (February 19, 1985), and Soo met the wage obligations thereafter.

Several months later, on October 15, 1985, the trustee paid the former employees of Railroad a portion of the proceeds from the sale of assets to Soo, after deducting from each recipient's share the appropriate amount of employment taxes imposed upon wage recipient railroad employees by the RRTA. Shortly thereafter, on October 18, 1985, the trustee paid to the Internal Revenue Service *both* the employer's and the employees' shares of RRTA taxes in amounts totalling $4,872,260.14 and $2,471,822.42, respectively. In April of the following year, the appropriate form (CT–1) reflecting both the 1985 sale proceeds payments and the tax deposit was filed with the IRS.

Pursuant to the Final Decree and Consummation Order of the district court, dated November 25, 1985, the trustee then transferred all rights, title and interest in the assets remaining in the estate back to the debtor, Railroad, which was renamed

CMC Real Estate Corporation ("Real Estate"). As successor in interest to Railroad and the trustee, Real Estate paid the former Railroad employees the second and final portion of the asset sale proceeds on September 30, 1986. As with the first payment made by the trustee, *supra,* Real Estate deducted from each recipient's share the proper amount of RRTA employment taxes for which liability arose from the satisfaction of the deferred wage obligation. On October 3, 1986, Real Estate similarly remitted *both* the employer's and the withheld employees' shares of RRTA taxes, attributable to the transaction, to the IRS in amounts of $2,627,871.53 and $1,367,981.22, respectively. In January 1987 Real Estate filed form CT–1 with the IRS reflecting the second payment of the asset sale proceeds and the tax deposit.

On or about April 22, 1988, Real Estate timely filed claims for refund with the IRS for both the employer's and employees' shares of RRTA taxes allegedly overpaid in connection with the distribution of the sale proceeds to the employees. In its response to the instant motion, plaintiff states that, at the time of filing the administrative claim(s) with the IRS, it contemporaneously notified Railroad's former employees that they should claim a credit on their individual federal income tax returns for the net amount overpaid by each. In that connection, taxpayer alleges in its amended complaint, upon information and belief, that *most* of the employee recipients of the 1985 and 1986 asset sale proceeds have "received a refund of the employees' share of the railroad retirement tax through credits on their own federal income tax returns."

CMC Real Estate Corporation was then liquidated on November 30, 1989, and all of its assets, including the outstanding refund claims, were transferred to its parent company, Chicago Milwaukee Corporation ("CMC"), the real party in interest before the court. More than six months after the filing of the administrative refund claim,[5] on or about July 9, 1992, and without having received notification from the IRS as to

5. *See* 26 U.S.C. § 6532(a)(1) (1989).

a ruling on said claim, CMC filed suit in this court against the United States for refund of the allegedly overpaid employer *and employee* railroad taxes.

## ISSUE

The sole issue presented by defendant's motion to dismiss is—whether the regulations referred to in § 7422 of the Internal Revenue Code ("IRC" or "the Code"), *require* an employer to claim a refund for the employees' portion of railroad employment taxes when filing a claim for the employer's portion alleged to have been overpaid, and to either effect reimbursement to the employees of such overpaid amounts or secure their written consent to allowance of the refund *as a precursor* to the filing of an efficacious claim for the employer's and employees' portions.

Taxpayer maintains that neither is mandated by the regulations or the decisional case law interpreting them when the issue of overpayment is disputed by the government. However, CMC Real Estate (CMC's predecessor in interest), did file for refund of the employees' portion of the allegedly overpaid taxes along with its claim for the employer's portion, in what it called "an abundance of caution."

Conversely, defendant contends that plaintiff failed to comply with § 6413 and Treas.Reg. §§ 31.6402(a)–2(a)(2)(i), 31.-6413(a)–1(b), and 31.6413(a)–2(a), in that it:

(i) failed to refund to its employees the excessive amounts of RRTA taxes plaintiff alleges it withheld from their wages in 1985 and 1986;

(ii) failed to request from its employees their written consents to plaintiff's filing claims against the government for refund of their RRTA taxes on their behalf; and

(iii) failed to credit the alleged overpayments of its employees' RRTA taxes for 1985 and 1986 against later payroll taxes. These are, aver defendant, mandatory prerequisites both to maintaining any tax refund action against the United States, and to making any claim upon which relief can be granted.

An examination of the Treasury regulations is therefore warranted.

## DISCUSSION

■ "Taxpayer suits for refunds are governed, in part, by the principles of sovereign immunity." *Mallette Bros. Constr. Co. v. United States,* 695 F.2d 145, 155 (5th Cir.1983). It is well established that suits in derogation of sovereign immunity must adhere strictly to the conditions by which the sovereign allows it. *See, e.g., United States v. Michel,* 282 U.S. 656, 659, 51 S.Ct. 284, 285, 75 L.Ed. 598 (1931). "Men must turn square corners when they deal with the Government. If it attaches even purely formal conditions to its consent to be sued those conditions must be complied with." *Rock Island, Arkansas & Louisiana R.R. Co. v. United States,* 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188 (1920) (Holmes, J.). Additionally, where the court, as here, is addressing a motion to dismiss, the general rules respecting same were recently summarized in *Executive Court Reporters, Inc. v. United States,* 99 Fed.Cl. 769 (Fed. Cl.1993), as follows:

When evaluating a motion to dismiss for lack of subject matter jurisdiction and for failure to state a cause of action upon which relief can be granted, the allegations of the complaint should be construed favorably to the pleader, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), to the end that the court must accept as true the facts alleged in the complaint. *See also Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir. 1988), *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). The central issue in evaluating such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims...." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

Plaintiff bears the burden of establishing jurisdiction. *Reynolds,* 846 F.2d at 748 (citing cases). Dismissal is appropriate only if "it is beyond doubt that the plaintiff can prove no set of facts which

would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). For purposes of passing on a motion to dismiss pursuant to RCFC 12(b)(1), the court is not confined to an examination of the complaint. Instead, the court may consider "evidentiary matters outside the pleadings." *Indium Corp. of America v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986) (citations omitted).

■ While the United States has long consented to tax refund suits, it has clearly conditioned that consent upon the prior filing with the Secretary of an administrative claim made in accordance with the relevant provisions of law and the regulations promulgated by the Secretary. 26 U.S.C. § 7422 (1989);[6] *Sun Chem. Corp. v. United States*, 698 F.2d 1203, 1206 (Fed.Cir. 1983) ("It is a well established rule that a timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit."); *Mertens v. United States*, 12 Cl.Ct. 678, 679 (1987) ("In tax refund cases, permission to sue ... is conditioned upon a claim for refund having been 'duly filed.'").

1. *The Relevant Regulations.*

■ Treas.Reg. § 31.6402(a)–2(a) governs credits or refunds of Federal Insurance Contributions Act (FICA) and RRTA taxes. Paragraph (a) allows any person who pays more than the correct amount of employee and employer portions of FICA or RRTA taxes to file claims for both.

---

**6.** The statute states in relevant part:
 "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."
 26 U.S.C. § 7422.

**7.** *Idaho First Nat'l Bank v. Commissioner*, 997 F.2d 1285, 1289 (9th Cir.1993) ("'legislative regulations' must be accorded their plain meaning

---

That section states in pertinent part as follows:

> (1) *In general.* Any person who pays to the district director more than the correct amount of—
>
> \* \* \* \* \* \*
>
> (ii) Employee tax under section 3201 ... or employer tax under section 3221, of the Railroad Retirement Tax Act,
>
> \* \* \* \* \* \*
>
> may file a claim for refund of the overpayment....
>
> (2) ... *Every* claim filed by an employer for refund or credit of employee tax under [FICA or RRTA] ... collected from an employee *shall* include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee to allowance of the refund or credit....

Treas.Reg. § 31.6402(a)–2(a)(1) and (2)(i) (emphasis added). According to the regulation's plain meaning,[7] it is patently clear that compliance antecedent to the filing of a claim for refund of the employees' share of the tax is mandatory. The question remaining, then, is whether the employer *must* include a claim for the employees' excess payment in its claim for the amount the employer itself allegedly overpaid to the government. If the answer is yes, then plaintiff's claim must fail as to both portions because it undoubtedly failed to satisfy § 31.6402(a)–2(a)(2)(i).

Paragraph (a) of § 31.6413(a)–1(i) allows an employer to repay employees *overcollected* employment taxes without reporting the overcollection or paying it to the dis-

---

'where the language selected by the drafters is clear and unequivocal.'") (quoting *KCMC, Inc. v. FCC*, 600 F.2d 546, 549 (5th Cir.1979)) (footnote omitted). *A.B. Long, Jr. v. United States*, 10 Cl.Ct. 46, 54 (1986) (stating that unambiguous Treasury regulations should be accorded their plain meaning).

 The regulations at issue here are "legislative regulations" because Congress expressly delegated authority to promulgate such regulations to the Secretary in IRC § 7422. *Idaho Bank*, 997 F.2d at 1289 n. 7. As such, unlike ordinary regulations, they have the force and effect of law. *Id.*

trict director *if* the repayment is made *before* the appropriate returns are filed. On the other hand, if the employer does not return the money to the employees prior to filing the returns, the employer "shall" report and pay the amount to the district director. Treas.Reg. § 31.6413(a)–1(a)(1)(ii). Once the employment tax returns are filed, the employer *"shall" repay the employees if the error is ascertained within the applicable limitations period for credit or refund.* Treas.Reg. § 31.-6413(a)–1(b) (emphasis added). The employer is exempted from the refund requirement if the overcollection and overpayment to the district director is "made the subject of a claim ... for refund or credit, *and the employer elects to secure the written consent of the employee to the allowance of the refund or credit under the procedure provided in [§ 31.6402(a)–2(a)(2)(i) ]."* Treas.Reg. § 31.6413(a)–1(b)(1)(i) (emphasis added). "If the employer does not repay the employee the amount overcollected, the employer shall reimburse the employee by applying the amount of the overcollection against the employee tax which attaches to wages ... paid to the employee prior to the expiration of the [next return period after ascertaining the error]." Treas.Reg. § 31.6413(a)–1(b)(1)(iii).

Section 31.6413(a)–1 speaks exclusively to the return of overcollected employment taxes to the employees from whom the taxes have been withheld. In fact, the regulation directs the employer who errs in its collection of such taxes to reimburse the affected employees (if discovered within applicable limitations periods), without mention of any refund from the government to the employer.[8] Additionally, each of the regulations which speaks to claims for refunds of employment taxes speaks to the employees' portion exclusively or to the

employees' portion before discussing the employer's portion.[9] While "[n]either the IRC nor the regulations expressly provide that an employer who has overpaid both the employer and the employee FICA taxes must claim a refund or credit on behalf of its employees in order to obtain a refund or credit of its own overpayment," *Atlantic Dep't Stores, Inc. v. United States,* 557 F.2d 957, 958 (2d Cir.1977), "the existing statutes and regulations *clearly imply an obligation* on the part of the employer to claim a refund or credit on behalf of those employees with respect to whom the employer can reasonably adjust its overpayment." *Id.* at 959 (emphasis added).

2. *Precedent Interpreting The Regulations.*

a. *Cases Holding That Employers Must File For Employees' Claims.*

The *Atlantic* court reasoned that the requirement of § 31.6413(a)–1(b) to repay or reimburse, combined with the consent requirement of § 31.6402(a)–2(a)(2), made apparent the employer's obligation to secure a refund of both tax portions simultaneously. In support of its conclusion, the court examined the legislative history of the predecessors to IRC § 6413[10] and found that Congress intended overpayment to be corrected through adjustment of future tax collections, payments and return filings, and that it created the refund option to account for situations where such adjustment was not possible or practical. Since Congress intended for employers to adjust the overpayment whenever possible, it must have intended the employers to claim for both portions of the overpaid tax whenever that option had to be utilized. *See id.* at 960.

Lastly, the Second Circuit relied on considerations of practical reality and equity in

---

**8.** The section refers to the employer obtaining a refund only insofar as paragraph (b) permits the employer to avoid repaying the employee if the tax is the subject of a refund claim and the employer has received the consent of the employees in compliance with § 31.6402(a)–2(a)(2)(i). Such a reference in and of itself contemplates that the refund claim is being made on behalf of the employee.

**9.** *See* Treas.Reg. §§ 31.6402(a)–2, 31.6413(a)–1, 31.6413(a)–2.

**10.** Internal Revenue Code of 1939, §§ 1411 and 1421. *Atlantic,* 557 F.2d at 960 n. 2.

support of its holding. First, since it is the employer who calculates, withholds and pays the government the tax—

> ... it is more likely that the employer rather than its employees will discover any error with respect to an overpayment. Any error made by the employer, moreover, is likely to affect more than one employee, and, thus, since the employer periodically pays all of its employees and deducts FICA taxes from their wages, the employer is in a position to make appropriate adjustments with respect to overpayment for all of its employees in a manner which under usual circumstances should not be unduly burdensome. Whatever costs are involved in effecting proper adjustments should appropriately be borne by the employer because it was its error which resulted in the overpayment originally.

*Id.* at 961 (footnote omitted). As an aside, the court also gave thought to foreseeable burdens likely to be imposed upon the government if employers were not required to handle all refund claims on behalf of its employees:

> Additionally, from an administrative standpoint, it would seem to be more efficient for the IRS to process all of the employee tax overpayment claims from one employer at the same time rather than having to process each one individually when each employee submitted a claim on his own behalf or sought to claim a credit for the overpayment against his income tax pursuant to Regulation § 31.6413(c)–1.

*Id.* at 961 n. 3.

While the *Atlantic* court applied its holding only to those employees then on Atlantic's payroll at the date that Atlantic ascertained its error,[11] the regulations' coverage was extended by *Entenmann's Bakery, Inc. v. United States*, 465 F.Supp. 1118 (E.D.N.Y.1979), to include those employees who no longer worked for the taxpayer claiming the refund, but could nevertheless be contacted by the employer with "reasonable effort." *Id.* at 1120.

b. *Cases Where The Regulations' Requirements Were Inapplicable.*

The United States Court of Claims approved of the *Atlantic* holding in *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348 (Ct.Cl.1979), where it dismissed the taxpayer's suit for recovery of its own portion of FICA tax payments because the taxpayer claimed its (employer) portion only, and not its employees' portion as well.

In *Hotel Conquistador*, the taxpayer supplied meals to its employees and *withheld* FICA taxes from the employees' pay for the value of the meals, which value the taxpayer set at $.45. The government disputed the correctness of the $.45 value per meal as the basis for withholding and claimed that the value of each meal was instead $1.25. As a consequence, the hotel paid *both* the employer's *and the employees'* portions of the assessed deficiency from *its* own pocket without further withholding from the employees. Thereafter, the plaintiff filed a protest defending the $.45 valuation and at the same time claiming that even the $.45 meals were not subject, *at all*, to FICA and FUTA[12] taxes in view of § 119, Title 26 U.S.C. While the court decided that the protest could *not* be considered an informal refund claim, as taxpayer here suggests, apparently it did so because the protest of the original FICA payments on the $.45 meal value was *made only for the employer's portion, without inclusion of the employees' portion of withheld taxes* from gross wages. The court stated, in explaining, that:

> The 1973 "protest" cannot be taken as an informal claim for refund of the FICA taxes for the reason that, if it requested any refund of the original payments, it did so only for the employer's share. Plaintiff never purported, and does not purport now, to be seeking any adjustment on account of the employees' share,

---

11. "[A]n error is ascertained when the employer has sufficient knowledge of the error to be able to correct it." Treas.Reg. § 31.6413(a)–1(b)(1)(iv).

12. Federal Unemployment Tax Act, 26 U.S.C. § 3301, *et seq.*

which had been withheld from them, and this despite the fact that by its own theory maintained in the protest, the withholding by it was necessarily unauthorized and unlawful. Plaintiff cannot prosecute a claim for refund in that fashion.

*Hotel Conquistador*, 597 F.2d at 1354. Apparently, although plaintiff does not recognize it, the Court of Claims held the protest not to be an informal refund claim *because* it did not meet the requirements of the applicable regulations according to the interpretation in *Atlantic*, which the court implicitly endorsed. *Contra First Nat'l Bank of Chicago v. United States*, 964 F.2d 1137, 1141 (Fed.Cir.1992). The refund issue regarding the $.45 was not in the background of the case as plaintiff suggests, but rather was the focus of the refund discussion. The tax on the difference between the meals valued at $.45 and $1.25 was refunded to the hotel without much discussion in the opinion because the employees' portion of that ($1.25) assessment had in fact been paid by the hotel, without withholding from the employees. Since there was nothing to refund to the employees (because the employer had paid the tax for them), there was no refund issue as to that point. *See also id.* at 1141–42.

At bar, CMC also argues in its reply brief that "the Court of Claims clearly interpreted *Atlantic* as limited to current employees and only requiring protection of such employees' claims." (Pltf's Response to Deft's Motion to Dismiss at 15.) We think CMC misreads the Court of Claims because at no point in its opinion did the court in *Hotel Conquistador* deny the efficacy of the prepayment requirement when it adopted the Second Circuit's holding and rationale as follows:

> In *Atlantic Department Stores v. United States*, 557 F.2d 957 (2d Cir.1977), it is held that the claim for refund must show that the employee has, *if feasible*, been reimbursed for the tax overpayment collected from him.... It seems a clearly equitable requirement since *the employer should not be allowed to correct its own error as affecting its own pocket, but not as affecting the employee's.*

*Id.* at 1354–55 (emphasis added). Moreover, *Atlantic* clearly holds "that only when such an adjustment cannot be made should the employer be permitted to claim a refund." *Id.* at 960.

Over one year after *Hotel Conquistador*, the Court of Claims decided a closely-related, but distinct issue in *Hospital Data Center of S.C., Inc. v. United States*, 225 Ct.Cl. 158, 634 F.2d 541 (Ct.Cl.1980). That court implicitly reaffirmed *Hotel Conquistador* (where it paid both employer and employee portions of taxes on the $1.25 meal value) when it held that an employer may sue solely for recovery of its own portion of social security taxes without suing for recovery of its employees' tax remittance. In *Hospital Data*, the court distinguished between the regulations' requirements for administrative refund claims and suit to obtain a refund. While IRC § 7422 explicitly requires compliance with the Secretary's regulations prior to the assumption of jurisdiction by any federal court in a tax refund suit, once such compliance has been secured, the Code contains no similar guidelines, conditions or restrictions (outside of the RCFC or the FRCP) governing what claims he must bring or how a plaintiff must otherwise conduct his suit.

Plaintiff relies heavily on the Court of Claims' statement in *Hospital Data*. However, plaintiff asserts from the case a proposition for which it does not stand. In *Hospital Data*, the taxpayer complied in all respects with the regulations governing employment tax refunds. The government admitted that the taxpayer had secured the written consents of its employees for allowance of the credit, Deft's Reply To Pltf's Response To Deft's Motion To Dismiss App. at 21 (Deft's Reply Brief at 14, *Hospital Data* (No. 610–77)), and the court noted that Hospital Data did thereafter file administrative refund claims on behalf of its employees, along with its own claim, in accordance with the regulations. *Hospital Data*, 634 F.2d at 546 n. 17. As the letter of the regulations had been complied with,

the jurisdictional prerequisite to maintenance of the refund suit contained in § 7422 had been satisfied. At that point, the plaintiff was free to file its suit, making any claims it chose to make and eliminating those it preferred not to make. The Court of Claims did not, then, as CMC boldly asserts, reject the *Atlantic* rationale. It briefly stated the holdings of *Hotel Conquistador* and *Atlantic* without any language that could be even remotely construed as rejection, criticism or disapproval. The *Hospital Data* court distinguished the case before it and rejected only the notion that the strictures of the regulations extended beyond the administrative procedures that a taxpayer must follow as a condition precedent to filing suit. Taxpayer, at bar, can glean no comfort from *Hospital Data* for the simple reason that it has not complied with the threshold administrative directives applicable to its situation. Thus, it may not avail itself of the "suit after compliance" rule announced in *Hospital Data*. However, the *Hospital Data* court's implied reaffirmance of *Atlantic* and its progeny's interpretation of IRC § 7422 and Treas.Reg. §§ 31.6402(a)–2 and 31.6413(a)–1 is, of course, binding on plaintiff at bar.

While CMC's statement that *Hospital Data* is controlling precedent in the Court of Federal Claims is correct, its contention that "there is no requirement under Claims Court [sic] precedent that the employer even apply for a refund for any employee's share" and, therefore, defendant's motion should be denied is incredulous and entitled to short-shrift. First, we find that the prior cases outside of the Federal Circuit and its predecessor interpreting the regulations are persuasive in their analysis and logic. *E.g., Atlantic*, 557 F.2d 957; *Entenmann's*, 465 F.Supp. 1118; *Macy's New*

*York, Inc. v. United States*, 484 F.Supp. 181 (S.D.N.Y.1980). Second, *Hotel Conquistador*, a Court of Claims case, implicitly embraced the interpretation of the Code and regulations as espoused by the Second Circuit in *Atlantic*.

The Court of Appeals for the Federal Circuit, in *First Nat'l Bank*, also interpreted *Hotel Conquistador* as "not address[ing] procedures for obtaining a refund of FICA taxes, in particular 26 C.F.R. § 31.6402(a)–2; [but] rather, [dealing] solely with an employer's entitlement to a refund." [13] 964 F.2d at 1141. This is entirely true for the portion of employment taxes paid solely by the hotel for the deficiency assessed on the difference between the $.45 meal valuation used by the hotel and the $1.25 valuation used by the government. However, for the FICA withheld from the employees on the original $.45 valuation, the refund procedures under § 31.6402(a)–2 were directly at issue, and the *Atlantic* interpretation was clearly adopted by the Court of Claims in order for them to deny the hotel's refund claim for that portion of the tax in summary fashion. *See Hotel Conquistador*, 597 F.2d at 1356. The language from *Hotel Conquistador* quoted above, is, we believe, therefore, clearly indicative of its acceptance of *Atlantic*.

Similarly, CMC also misinterprets *First Nat'l Bank*. Contrary to plaintiff's reading, the Federal Circuit did not arrive at the conclusion therein that "[an] employer [may] prosecute both the employer and employee portion claims without regard to the provisions of the regulations on adjustment, repayment or consent" where the refund sought was disputed by the government.[14] Pltf's Response to Deft's Motion

13. The Federal Circuit's statement was apparently dicta, since it considered *Hotel Conquistador* unnecessary to its decision. Such an interpretation is, therefore, not binding on this court in resolution of the issue before it.

14. Whether the government chooses to waive enforcement of its own regulations or not, a court may not do so out of simple considerations of logic or "the most sensible result," as plaintiff urges.

Treasury regulations are reviewed with great deference. They "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." Thus, we review 26 C.F.R. § 31.6402(a)–2 with deference, and apply the regulation and the agency's interpretation of it as long as it "implements the congressional mandate in some reasonable manner."
*First Nat'l Bank*, 964 F.2d at 1139–40 (citations omitted).

to Dismiss at 19. What the Federal Circuit did say was that where the employer is the *only* party to pay FICA taxes (*i.e.*, the employer did not withhold FICA amounts from the employees' pay, but rather, paid both portions itself so that the employees' pockets were not affected), the regulations requiring prepayment or consent do not apply.

Moreover, to apply the regulation would be unreasonable under these circumstances.... The Bank should not be required to state that it "repaid" the taxes to its employees since there is no reason for it to repay taxes it never collected. In addition, securing the written consent of its employees should not be required given that the employees never paid the taxes in the first place. They had no interest in the Bank's gaining a refund.

*First Nat'l Bank*, 964 F.2d at 1141–42. The portion of the opinion that taxpayer quotes in its response makes *First Nat'l Bank* at least inapplicable to this case; and at most, it supports the government's case.[15] Whereas First National Bank in fact paid the FICA tax liability for its employees, CMC's employees here at bar paid their own RRTA liability through withholding.

The three cases cited by the parties that allowed refund claims or suits for the employer's portion only or for both portions without prepayment to or consent by the employees are, therefore, factually distinguishable from the case at bar and are of no avail to plaintiff. In *First Nat'l Bank*, the bank provided free lunches to its workers for its own convenience. While the IRS did not dispute that the value of the lunches was excludable from the employ-

ees' gross income,[16] it asserted that the meals were includable in FICA wages for determining FICA withholding and employer contribution. The bank paid the FICA taxes for itself and for its employees without withholding any money from the employees' paychecks. The tax payment made on the employees' behalf was included on each individual W–2 Form (Wage and Tax statement) as taxable income. The bank then also paid the additional income taxes resulting from the FICA tax payment, so that each employee would receive the same take-home pay as before the assessment. The bank filed a timely claim for refund of both portions and filed suit after the IRS denied the claim. In holding that the employer was entitled to a refund of the employee tax portion,[17] the Federal Circuit focused on the language of the regulations. Treas.Reg. § 31.6402(a)–2 required refunds to or consents from employees for FICA taxes *collected from an employee*. Since the bank paid all taxes without ever withholding any amounts from its employees and took steps to ensure that the employees' take-home pay remained constant, the court held that no amounts were "collected" from the employees. Accordingly, that court held that the regulation's purpose would not be served by enforcing its requirements, since the employees could never receive a refund of any taxes which they had not paid in the first instance. Those facts are not the facts at bar.

To a similar effect is *Hotel Conquistador*. There, the Court of Claims allowed a refund to the employer for both portions of the FICA deficiency paid to the government which were paid *solely* by the em-

---

**15.** The Federal Circuit did not have before it the question of whether an employer's portion refund claim required an employee's portion as well.

The amount at issue also includes the employer's portion of FICA taxes paid pursuant to 26 U.S.C. § 3111. It is conceded that the Bank's entitlement to a refund of the employer taxes is dependent upon its entitlement to a refund of the employee taxes. Thus, our attention is directed solely to the Bank's entitlement to a refund of the employee taxes.

*First Nat'l Bank*, 964 F.2d at 1139 n. 4. While not providing precedent of substantial weight to rely on, it should be noted that the Federal Circuit did not take issue or even question the Bank's concession.

**16.** I.R.C. § 119 allows meals provided free to employees to be excluded from their gross wages if the meals are furnished for the convenience of the employer and on the employer's business premises. 26 U.S.C. § 119(a) (1988).

**17.** *See supra* note 15.

ployer without withholding. However, the court dismissed the petition for refund of the FICA taxes for which the taxpayer had withheld the employees' portion from their paychecks. In that connection, the court declined to consider the hotel's protest of the previously paid FICA tax as an informal claim for refund because the taxpayer failed to include the employees' portion of the tax in its refund claim.

Lastly, the Court of Claims found jurisdiction in *Hospital Data,* notwithstanding the fact that the taxpayer brought suit for refund of only the *employer's* portion of social security taxes withheld and paid. However, the court noted there that the taxpayer had in fact complied with all applicable regulations regarding claiming refunds on behalf of its employees for the taxes which it had overwithheld from them, namely that the employer had first secured the employees' written consents to allowance of the refund.

 None of the established exceptions to the regulations as explicated in the above-cited cases apply to plaintiff's case at bar. By its own admission, CMC did not pay its employees' RRTA tax liability out of its own pocket, but rather, paid only for itself. According to its amended complaint, the trustee initially withheld (what it considered to be at that time) the proper amount of employment taxes from its payment of the asset sale proceeds to the employees. For the second installment payment of the sales proceeds, CMC Real Estate, successor to the trustee and Railroad, followed the same procedure, withholding the proper amount of tax from the employees' proceeds payments. Since the employees for which CMC claims a refund paid their own tax liability through withholding by CMC's predecessors in interest, taxpayer cannot bring itself within the scope of the narrow exception to §§ 31.-6402(a)–2 and 31.6413(a)–1. Accordingly, the regulations requiring protection of the employees' interests by either repayment or written consent apply, and plaintiff's failure to satisfy either element is, therefore, fatal to its claim and suit for refund of its own portion as well.

Plaintiff also contends that its situation is sufficiently analogous to other cases that have held the regulations applicable to various fact scenarios but did not enforce the regulations to the letter or did not require compliance with regard to those *employees no longer connected to* or with the company. While plaintiff is correct that the door permitting exceptions to full compliance with the regulations has been left slightly ajar by other cases, taxpayer's fact scenario is singularly appropriate for warranting full compliance with the administrative prerequisites to the filing of a refund claim or suit.

CMC seizes upon specific language in three cases in support of its contention. First, taxpayer quotes from *Entenmann's:*

> Where it is "impossible or too expensive" to locate the employees the government agrees that the overpayments "cannot be adjusted" and that a refund under Section 6413(b) is appropriate.

> \* \* \* \* \* \*

> As ordinarily understood an "adjustment" may be made in more than one way, as the Latin derivation of the word makes manifest. An adjustment sets things right. The affairs of an employer and one who has performed work for him may be set in order even though the employment has ceased and there are no future payments in which the adjustment may be reflected....

> Under the philosophy of the *Atlantic Dept. Stores, Inc.* case plaintiff, before it can claim a refund of its share of the taxes must make a reasonable effort within the applicable period to "adjust" the overcollection and overpayment of the employees' share. *At a minimum this means mailing an appropriate letter to an employee's last known address and asking for return of an appropriate form.* Plaintiff has not taken even this step.

*Id.* at 1119, 1120 (emphasis added). Evidently, plaintiff looks to the court's "minimum requirement" in the last sentence and takes that to mean that it can mail a simple letter to its former employees apprising

them of the error and instructing them to claim their own refunds. In light of the previous discussion concerning judicial ability to waive statutory and regulatory requirements, the *Entenmann's* court could not have intended its statement to carry with it the meaning that plaintiff attempts to attach to it.

The regulations themselves speak in absolutes. Treas.Reg. § 31.6402(a)–2 speaks to "every claim" by an employer needing proof of repayment or consent, and § 31.-6413(a)–1 states that the employee "shall" be repaid. *Atlantic* and its progeny, however, realized that practical considerations might warrant certain allowances. For example, if former employees were unable to be found after a reasonable search, no point would be served by denying an employer its refund if attempted substantial compliance with the regulations resulted in failure. With that and the duty to apply the regulations in mind, the *Entenmann's* court, in using the phrase "appropriate letter," must have meant a form or letter for the employee to sign and return to the employer giving consent to allowance of the refund. If there is any doubt, that court's use of the subsequent phrase "asking for the *return* of the appropriate *form*" removes it. By "minimum," therefore, the *Entenmann's* court could not have meant that that is all which must be done in all cases. But if circumstances dictate, as where the employer has no idea of where to locate the employee, it may suffice.

Conveniently, taxpayer hospitably omitted the last sentence from the middle paragraph quoted above, *i.e.,* "Certainly Congress recognized in the 1939 enactment that it was 'possible' to make an 'adjustment' [even] where the employee's connection with the employer had been 'severed.'" *Id.* at 1120. Taken with the por-

tion of the opinion quoted by CMC in its opposition to defendant's motion, the propriety of the above analysis and taxpayer's misinterpretation is apparent.

Plaintiff also states that *Atlantic* "specifically refers to making a claim on behalf of the *current employees* only as being satisfactory, presumably even if no consents were provided." Pltf's Response at 14–15. Again taxpayer reads a meaning that would be judicially impermissible into the phraseology of a court. The *Atlantic* court's statement to which plaintiff refers is: "[W]e find that the existing statutes and regulations clearly imply an obligation on the part of the employer to claim a refund or credit on behalf of those employees with respect to whom the employer can reasonably adjust its overpayment." *Atlantic,* 557 F.2d at 659. Obviously, the *Atlantic* court was referring to claiming a refund within the guideline of the regulations. To imply otherwise would defy reason.

CMC then goes on to state that "[t]he language of the *Macy's* case also indicates that this [*i.e.,* asserting claim only for current employees] may have [also] been sufficient." Pltf's Response at 15. The portion of the opinion plaintiff offers in support of its contention lends no credibility to its statement.[18] Conversely, the portions of the *Macy's* opinion not offered by taxpayer directly contradicts its position—

[In *Atlantic Dep't Stores*], the court recognized that since it is the employer's responsibility to collect FICA taxes from its employees, the employer is usually at fault when an overpayment is made. The employer, moreover, is in the better position to discover and remedy any such mistake, and any costs involved in adjusting the overpayment of innocent employees should be borne by the erring party. It follows, therefore, that *where adjust-*

---

**18.** In support of its assertion, CMC quoted the opinion as follows:

Both the time remaining before a claim is timebarred and the time necessary to effect the required employees' adjustments, however, are factors directly within the employer's control. An employer who discovers its mistake too late, or whose adjustment procedure

is too slow to permit timely correction of its employees' overpayment, should not profit from its error by being permitted to file its own refund claim while wholly avoiding the possibly substantial expense of employee adjustment.

*Macy's,* 484 F.Supp. at 183. This statement in no way supports CMC's contention.

*ment is not reasonably possible because a former employee cannot be located or for some other reason not within the employer's control, no purpose would be served by prohibiting the employer from filing its own claim.*

*Macy's,* 484 F.Supp. at 182 (emphasis added).

### 3. *Factual Analysis Of The Instant Case.*

The facts of the case at bar, on this indisputable record, do not warrant giving CMC the benefit of a lenient application of the regulations, so that it may maintain this suit in the face of less than full compliance. Although plaintiff strenuously argues that its particular circumstances are deserving of relaxed enforcement of the Secretary's rules, we do not agree. In essence, the very facts that plaintiff proffers in support of excused compliance, based on equitable considerations, serve as the platform from which the government's position is fortified.

Taxpayer claims that it would be an unfair burden for it to have to track down approximately 8,000 employees with whom it has not had contact for three years prior to ascertaining the error. The record shows that, after the asset sale to Soo, taxpayer was required to pay a portion of the proceeds to Railroad's former employees, which it did. Whether plaintiff paid each former employee individually or all at once through an intermediary, such as the involved unions, it managed to accomplish its task. Whatever method it used, it would not have been unduly burdensome for plaintiff to follow the same path to attempt contacting its affected employees. As the *Entenmann's* court observed, plaintiff could have, at least, sent a letter to each employee requesting the return of an enclosed consent form. For those returned, plaintiff would have known those persons' whereabouts with minimal effort and expense.[19] For those not returned, plaintiff could at least have offered its effort to the government as a good faith attempt at compliance with the regulations. Even if the government had not accepted that, a court would then be in a position to consider whether fundamental fairness demanded treatment of the attempt as deemed compliance, without impermissibly ignoring congressional mandate and statutory authority. Success is not a *sine qua non* of satisfying the regulations, but rather, a good faith attempt and a showing of undue burden or clear impracticability certainly is.

Moreover, plaintiff stated that most of Railroad's former employees continued to work for Soo after the asset sale. Given this concession, it would, of course, have been very easy and administratively inexpensive to contact them at or through Soo. Even if all of the employees could not have been reached there, certainly a large number might have been. Taxpayer could have then attempted other reasonable methods to reach the remainder. For instance, CMC could have mailed the previously discussed correspondence to the last known home

19. In *Atlantic,* the parties stipulated—that the average overpayment per employee was $4.83; that the estimated cost to Atlantic of computing the amount of overcollection and refunding the amount by mail would be $2.25 for those employees whose location was known and were cooperative; and that for those employees whose whereabouts were not known or were uncooperative, the cost of repayment could exceed the amount of the refund. *Atlantic,* 557 F.2d at 958. In the case at bar, the aggregate withheld employee portions of RRTA tax is $3,839,803.70 ($2,471.882.48 + $1,367,981.22), and approximately 8,000 former employees are affected by the alleged overpayment. Therefore, the amount of refund per employee would be roughly $486 ($3,839,803.70 ÷ 8000). Plaintiff has made no offer as to what its estimated compliance cost per employee would be. However, it is logical to assume that to mail consent forms and/or checks to its former employees, the cost could not be greatly in excess of that stipulated by the parties in *Atlantic.* But even if it were, the *Atlantic* court declined to excuse the taxpayer from its duty where the cost of providing the refund was nearly half of the amount of the benefit to the employees. Certainly CMC's per employee refund cost could not reach those proportions, but if it did, plaintiff would still have to comply with the regulations in order to maintain a refund suit. Under the rationale of all of the cases discussed herein, we are constrained to conclude that since it was CMC's fault that the employees overpaid their RRTA taxes, it should fully comply with the regulations and established precedence.

address of those employees not yet contacted. Indeed, CMC could have done this for all of the former employees without ever using the unions or Soo as an intermediary. Instead, plaintiff chose to do nothing but claim for the employees' portion without satisfying the *mandatory* precondition imposed by the regulations.

Plaintiff also states that, upon payment to the employees of their portion of the asset sale proceeds, it notified them that the taxes withheld might be in excess of their taxable wage base and instructed them to claim refunds of any excess taxes paid through credits on their individual income tax returns.[20] Further, taxpayer claims, without knowing (because it claims "upon information and belief"), that because most of Railroad's former employees continued to work for Soo after the asset sale, it is likely that most, if not all, of the affected employees have already received a credit for their overpayment. In its refund claim proceeding, plaintiff furnished the IRS with the names of its former employees and requested that the Service use such information to determine which, if any, of the individuals had claimed and received credits.

The fact that plaintiff told its employees to investigate their tax situation is irrelevant, and fails to comply with its explicit obligations under the regulations. Moreover, taxpayer cannot satisfy its obligation to comply with the applicable regulations,[21] that it either refunded the tax or obtained consent from the employees, by shifting the burden to the IRS.[22] The directions contained in the regulations more than imply that the explicit burden rests on the employer to prove that it has refunded the

overpaid tax in the case of reimbursement; and where the option to obtain written consent is exercised, the burden would likewise obviously be on the employer. The administrative holocaust that would be imposed upon the IRS by a shifting of the burden, if the regulations required each employee to individually pursue his or her refund, is manifest. Therefore, we hold that CMC's action in merely supplying names to the IRS for verification of credits received cannot suffice to satisfy the regulation's mandate.

Contrary to its contention, we further hold that plaintiff has failed to take all reasonable steps to protect its former employees' interests and comply with the obligatory regulations. Even if, as plaintiff states, it would be unfair for the taxpayer to have to reimburse the employees prior to filing a claim where there was no guarantee of plaintiff's own recovery because the government disputed the overpayment, CMC had the option to utilize the alternative method provided by the Secretary, *i.e.*, to obtain or show its attempt to obtain the employees' written consents. In that way, plaintiff would not have to risk non-recovery of the reimbursed tax. It also failed to comply in this regard.

## CONCLUSION

Because plaintiff filed suit to recover the foregoing employer and employee taxes alleged to have been erroneously overpaid without having filed claims with the Secretary, as explicitly required by § 7422(a) of the Code, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED. Therefore, plaintiff's amended complaint is hereby DISMISSED WITH

---

**20.** Plaintiff claims that it did not have any information on the employees' RRTA taxable wage base for the period in which the sale proceeds payments were made and respective taxes already withheld.

**21.** Even if plaintiff was complying with the spirit of the regulations, Justice Holmes' statement in *Rock Island, Arkansas & Louisiana R.R.*, quoted *supra*, at 780, makes clear that anything less than strict compliance with the letter of the conditions placed on the waiving of sovereign immunity is unacceptable.

**22.** 26 C.F.R. § 31.6402(a)–2(a)(2) directs the employer claiming the employees' share of RRTA tax to "include a statement that the employer has repaid the tax to such employee or has secured the written consent of such employee...." 26 C.F.R. § 31.6413(a)–1(b)(1)(ii) instructs the employer to "keep as part of his records the written receipt of the employee, showing the date and amount of the repayment."

PREJUDICE. The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.