GARY W. SWINDELL AND WIFE, LILLIAN R. HARRIS SWINDELL v. THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SKYLINE MORTGAGE CORPORATION

No. 70PA90

(Filed 7 November 1991)

1. **Usury § 5 (NCI3d)— mortgage—late fee—forfeiture of fee**
   The Court of Appeals correctly held that a mortgage late payment charge was excessive in violation of N.C.G.S. § 24-10.1, and that defendants forfeited their right to collect late charges, but not their right to receive principal and interest. The note executed by plaintiffs contemplated interest for two separate transactions, the contract for a home loan and the cost of delayed loan payments. The four elements of usury are present with regard to the late payment penalty provision, and the penalty for charging usurious interest is forfeiture of the entire interest. When late charges are usurious, "the entire interest" can only signify any and all penalty fees for late payments. N.C.G.S. § 24-2.

   **Am Jur 2d, Interest and Usury §§ 238, 240, 241.**

   **Validity and construction of provision imposing "late charge" or similar exaction for delay in making periodic payments on note, mortgage, or installment sale contract. 63 ALR3d 50.**

SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.

[330 N.C. 153 (1991)]

2. **Usury § 1.2 (NCI3d) — mortgage — late fee — savings clause — not effective**

   A usury savings clause in a mortgage did not shield a lender for charging usurious rates in its late fees. A lender cannot charge usurious rates with impunity by making that rate conditional upon its legality and relying upon the illegal rate's automatic rescission when discovered and challenged by the borrower.

   **Am Jur 2d, Interest and Usury §§ 238, 240, 241.**

   **Validity and construction of provision imposing "late charge" or similar exaction for delay in making periodic payments on note, mortgage, or installment sale contract. 63 ALR3d 50.**

3. **Bills and Notes § 5 (NCI3d) — mortgage — rate reduced — not fraudulent**

   The reduction of a mortgage late fee was not a fraudulent alteration discharging plaintiffs from the contract under N.C.G.S. § 25-3-407. Where, as here, the alteration is a reduction in rate intended to comply with the law and which in fact inures to the advantage of the other party, the alteration cannot be said to be fraudulent.

   **Am Jur 2d, Alteration of Instruments §§ 8, 9, 30, 31.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous opinion of the Court of Appeals, 97 N.C. App. 126, 387 S.E.2d 220 (1990), affirming summary judgment for defendants entered on 13 April 1989 by *Snepp, J.*, in the Superior Court, MECKLENBURG County. Heard in the Supreme Court 9 October 1990.

*Gary W. Swindell and Lillian R. Harris Swindell, plaintiff-appellants, pro se.*

*Alexander and Brown, by William G. Alexander, for defendant-appellees.*

*Margot Saunders, N.C. Legal Services Resource Center, and Mal Maynard, Legal Services of the Lower Cape Fear, for North Carolina Clients Council, amicus curiae.*

SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.

[330 N.C. 153 (1991)]

EXUM, Chief Justice.

[1] The question central to this appeal is how the penalty for usury under N.C.G.S. § 24-2 applies to a late payment charge that exceeds the maximum rate permitted under N.C.G.S. § 24-10(e). We hold the statutory penalty for usury requires defendant to forfeit all late payment charges to which it might otherwise have been entitled under the terms of the loan, but defendant is not required to forfeit the interest due on the loan itself.

On 22 March 1985, plaintiffs executed an adjustable rate note secured by a deed of trust on a home for $112,500.00. The note was executed on a multistate Federal National Mortgage Association (FNMA) Uniform Instrument form, which included a provision for late payment charges. A late payment charge rate of five percent of the overdue payment of principal and interest was typed in a blank provided on the form. The preceding paragraph, entitled "Loan Charges," stated:

> If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.

The FNMA purchased the note from the lender, Epic Mortgage Inc., in March 1985. Skyline Mortgage Corporation succeeded Epic as servicer of the loan. On 14 October 1987, Skyline sent plaintiffs notice of uncollected late charges. When Skyline discovered that the late payment penalty rate on plaintiffs' note exceeded the legal maximum under North Carolina law, it offered to reduce the rate to four percent, pursuant to the "Loan Charges" paragraph in the note. Defendants never collected a late payment penalty from plaintiffs.

Plaintiffs filed a complaint and an amended complaint for declaratory judgment, averring the five percent late charge was assessed on a payment not yet due, the charge was usurious under N.C.G.S. § 24-10.1, and reduction of that rate to four percent was fraudulent and a material alteration discharging plaintiffs from their obligations under the note. Plaintiffs sought a judgment declaring

the loan usurious, requiring defendant to forfeit all interest due under the note to FNMA or Skyline, or both, or, alternatively, discharging plaintiffs from the note pursuant to N.C.G.S. § 25-3-407. Plaintiffs further sought the court's application of N.C.G.S. § 24-2.1 and an award of all interest paid by them to any holder of the note from and after 22 March 1985 to the date of the court's order. Defendants, answering, denied the allegation that the late charge was usurious, added that plaintiff had refused Skyline's offer to change the rate to four percent, and requested the court to dismiss plaintiffs' complaints. Both plaintiffs and defendants subsequently filed motions for summary judgment.

The trial court granted defendants' motion for summary judgment and denied that of plaintiffs. The Court of Appeals affirmed in part and reversed in part, holding that the late payment charge was excessive in violation of N.C.G.S. § 24-10(e), but that the penalties of the usury statute, N.C.G.S. § 24-2, did not apply, for "the legislature did not intend for late charges to be considered interest." 97 N.C. App. at 129, 387 S.E.2d at 221. Because "public policy demands that there be something to discourage wrongful or erroneous late charges," 97 N.C. App. at 129, 387 S.E.2d at 222, the Court of Appeals imposed a penalty it considered consistent with the purpose of the usury statutes: defendants forfeited their right to collect late charges on the loan, but did not forfeit their right to receive principal and interest.

We agree with the holding of the Court of Appeals, but find authority for it in the statutes, as we must: "The entire subject of the rate of interest and penalties for usury rests in legislative discretion, and the courts have no power other than to interpret and execute the legislative will." *Smith v. Building and Loan Assn.*, 119 N.C. 249, 256, 26 S.E. 41, 42 (1896).

Chapter 24 of the General Statutes, entitled "Interest," governs a number of lending transactions for which it either states maximum interest rates or excepts the transaction from such statutory constraints. *See generally* N.C.G.S. §§ 24-1 through 24-16 (1986). Among the "transactions" governed by this chapter is a lender's charge for a borrower's late payment, for which the statute states a maximum rate:

(a) Subject to the limitations contained in subsection (b) of this section, any lender may charge a party to a loan or extension of credit governed by the provisions of G.S. 24-1.1, 24-1.2,

or 24-1.1A a late payment charge as agreed upon by the parties in the loan contract.

(b) No lender may charge a late payment charge:

(1) In excess of four percent (4%) of the amount of the payment past due.

N.C.G.S. § 24-10.1 (1986). The predecessor statute, N.C.G.S. § 24-10(e), in effect at the time plaintiffs signed their note, was essentially identical.[1] The single statute in chapter 24 stating penalties for charges exceeding the maximum rates stipulated in its provisions provides, in pertinent part:

The taking, receiving, reserving or charging a greater rate of interest than permitted by this chapter or other applicable law, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon.

N.C.G.S. § 24-2 (1986).

Plaintiffs argue that charging a five percent late penalty fee is usurious under N.C.G.S. § 24-2 and that defendants must accordingly forfeit all interest due under the note. Defendants counter that a late payment fee is not interest and that violation of N.C.G.S. § 24-10.1 consequently carries no penalty.

The forfeiture provisions of N.C.G.S. § 24-2 are "in the nature of a penalty intended to induce an observance of the statute, and it is the duty of the courts so to expound and apply the law as to carry out the legislative intent." *Moore v. Woodward*, 83 N.C. 531, 533 (1880). We are convinced that the General Assembly, which specified a maximum legal rate for late payment fees in N.C.G.S. § 24-10.1, considered such fees "interest" and intended to induce

---

1. "Any lender may charge a party to a loan made under G.S. 24-1.1A, a late payment charge on any installment of principal, interest, or both in an amount not to exceed four percent (4%) of such installment. The charges authorized by this subsection may not be charged by a lender unless an installment is more than 15 days past due; provided, however, for the purposes of this subsection, a late payment charge may not be charged until an installment is more than 30 days past due where interest on such installment is paid in advance." N.C.G.S. § 24-10(e) (1983 Cum. Supp.) (repealed and replaced with N.C.G.S. § 24-10.1 by 1985 N.C. Sess. Laws ch. 755, § 2).

observance of that law through the penalty provisions of N.C.G.S. § 24-2.

Interest is the cost of "the hire of money." *Bank v. Hanner*, 268 N.C. 668, 673, 151 S.E.2d 579, 581 (1966). More generally, "interest is the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." Black's Law Dictionary 729 (5th rev. ed. 1979). " 'Forbearance' means the contractual obligation of a lender or creditor to refrain for a given period of time from requiring the borrower or debtor to repay the loan or debt which is then due and payable." *Auto Supply v. Vick*, 303 N.C. 30, 39, 277 S.E.2d 360, 367 (1981). Just as a charge for a creditor's forbearance in the collection of a debt is interest, so a charge for a lender's forbearance in collecting a payment due is interest.

The note executed by plaintiffs in actuality contemplated interest for two separable monetary transactions. The more obvious transaction was the contract for a home loan exceeding $10,000, for which the parties were free to agree on any rate of interest. *See* N.C.G.S. § 24-1.1A(a) (1986). The second transaction contemplated was the cost of money retained—the delayed loan payment. A late payment fee has two purposes: to encourage the borrower to pay on time and to compensate the lender for the loss of use of the payment held for the period of the delay. In the latter use the late payment charge is interest, for it is compensation fixed by the parties for the detention of money or for the lender's forbearance in collecting the late payment.

"[A]ny charges made against [a borrower] in excess of the lawful rate of interest, whether called fines, charges, dues or interest are, in fact, interest and usurious." *Hollowell v. B. & L. Association*, 120 N.C. 286, 287, 26 S.E. 781, 781 (1897). In *Supply, Inc. v. Allen*, 30 N.C. App. 272, 227 S.E.2d 120 (1976), a charge on a payment past due similar to that charged plaintiff here was deemed interest. In that case the Court of Appeals examined a "service charge" imposed upon an account resulting from the purchase of plumbing equipment. It concluded that the charge was "for plaintiff's forbearance in the collection of the debt at the end of the payment period; as such, the . . . service charge is interest." 30 N.C. App. at 280, 227 S.E.2d at 126. Because the service charge rate exceeded that permitted under N.C.G.S. § 24-11(a), limiting "interest, finance charges, or other fees" on the extension of credit

under an open-end or similar plan to one and one-half percent, the two percent "service charge" was held usurious. *See also Fisher v. Westinghouse Credit Corp.*, 760 S.W.2d 802, 807 (Tex. Ct. App. 1988) (assessing whether late payment usurious by calculating highest legal rate times monthly payment times number of days payment past due and terming overdue payment a "loan").

The elements of usury are a loan or forbearance of the collection of money, an understanding that the money owed will be paid, payment or an agreement to pay interest at a rate greater than allowed by law, and the lender's corrupt intent to receive more in interest than the legal rate permits for use of the money loaned. *Auto Supply v. Vick*, 303 N.C. at 37, 277 S.E.2d at 366; *Henderson v. Finance Company*, 273 N.C. 253, 263, 160 S.E.2d 39, 46 (1968).

> The corrupt intent required to constitute usury is simply the intentional charging of more for money lent than the law allows. Where the lender intentionally charges the borrower a greater rate of interest than the law allows and his purpose is clearly revealed on the face of the instrument, a corrupt intent to violate the usury law on the part of the lender is shown.

*Kessing v. Mortgage Corp.*, 278 N.C. 523, 530, 180 S.E.2d 823, 827 (1971) (citations omitted).

These four elements are all present with regard to the late payment penalty provision in plaintiffs' note. First, there was a "loan" consisting in this context of the amount of principal and interest thereon due in the allegedly overdue payment. The note's scheduled repayment of principal and interest thereon indicated the parties' expectation that each payment would eventually be made. The note provided that a payment delayed more than fifteen days would be assessed late charges at five percent of the payment amount, a rate that exceeded the legally permissible rate. Corrupt intent was shown simply in imposing the usurious rate. "A profit, greater than the lawful rate of interest, intentionally exacted as a bonus for the loan of money, . . . is a violation of the usury laws, it matters not what form or disguise it may assume." *Henderson v. Finance Co.*, 273 N.C. at 263, 160 S.E.2d at 46 (quoting *Doster v. English*, 152 N.C. 339, 341, 67 S.E. 754, 755 (1910)).

The penalty for charging usurious interest, whether or not it is collected, is the "forfeiture of the entire interest which the

SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.

[330 N.C. 153 (1991)]

. . . evidence of debt carries with it." N.C.G.S. § 24-2 (1986). In the restricted context of a late charge on a delayed payment, "forfeiture of . . . interest" in no way implicates the interest on the principal. When late charges are usurious, "the entire interest" can only signify any and all penalty fees for late payments. The penalty fee is "interest." It is compensation for the detention of money owed another, and all such compensation must be forfeited when its rate is usurious, as defined by the laws of this state.

[2]   In addition, we hold that the "usury savings clause" stated in the note's "Loan Charges" paragraph cannot shield a lender from liability for charging usurious rates. The purpose of chapter 24 is to further "the paramount policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws." N.C.G.S. § 24-2.1 (1986). The usury statutes codify "the idea of protecting the borrower against the oppression of the lender." *Moore v. Woodward*, 83 N.C. 531, 533. The statute relieves the borrower of the necessity for expertise and vigilance regarding the legality of rates he must pay. That onus is placed instead on the lender, whose business it is to lend money for profit and who is thus in a better position than the borrower to know the law. A "usury savings clause," if valid, would shift the onus back onto the borrower, contravening statutory policy and depriving the borrower of the benefit of the statute's protection and penalties. "The nature and terms of the contract determine its character and purpose, and if usurious in itself it must be so understood to have been intended by the parties, and they cannot be heard to the contrary." *Burwell v. Burgwyn*, 100 N.C. 389, 392, 6 S.E. 409, 410 (1888). A lender cannot charge usurious rates with impunity by making that rate conditional upon its legality and relying upon the illegal rate's automatic rescission when discovered and challenged by the borrower.

[3]   Plaintiffs argue that reducing the late charge rate pursuant to the "Loan Charges" paragraph was a material and fraudulent alteration discharging them from the contract under N.C.G.S. § 25-3-407. Although the reduction in rate is unquestionably material insofar as "it changes the contract of any party thereto in any respect," N.C.G.S. § 25-3-407(1), it was not fraudulent. For purposes of this provision, "fraud requires a dishonest and deceitful purpose to acquire more than one was entitled to under the note as signed by the makers rather than only a misguided purpose." *Thomas v. Osborn*, 13 Wash. App. 371, 377, 536 P.2d 8, 13 (1975). Where,

as here, the alteration is a reduction in rate intended to comply with the law and which in fact inures to the advantage of the other party, the alteration cannot be said to be fraudulent. "There is no discharge where . . . a change is made with a benevolent motive such as a desire to give the obligor the benefit of a lower interest rate." N.C.G.S. § 25-3-407 (1986) (Official Comment). Defendants' motives to bring their late fee rate into accord with North Carolina law were no doubt less "benevolent" than expedient, but there is no evidence in the record that fraudulent intent motivated the reduction.

We conclude it was the intent of the General Assembly to enforce late charges violating N.C.G.S. § 24-10.1 by the penalty provisions of N.C.G.S. § 24-2, which, under the facts of this case, require the lender's forfeit of all late charges to which it would otherwise be entitled under the terms of the loan. We accordingly hold the decision of the Court of Appeals is

Modified and affirmed.