# United States Court of Appeals
## For the First Circuit

No. 02-2455

TEXTRON INC. AND SUBSIDIARY COMPANIES,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES TAX COURT

[Hon. David Laro, U.S. Tax Judge]

Before

Lipez, Circuit Judge,
Porfilio,* Senior Circuit Judge,
Howard, Circuit Judge.

Kenneth B. Clark and James P. Fuller, with whom David L. Forst and Fenwick & West, were on the brief for appellant.
Kenneth W. Rosenberg, Attorney, Department of Justice, with whom Jonathan S. Cohen, Attorney, Department of Justice, and Eileen J. O'Connor, Assistant Attorney General, was on the brief for the Commissioner of Internal Revenue.

July 16, 2003

*Of the Tenth Circuit, sitting by designation.

**PORFILIO**, **Senior Circuit Judge**.     Textron Inc. and Subsidiary Companies (Textron) appeals an order in the Tax Court holding its subsidiary, Paul Revere Corporation (Paul Revere), was not permitted to deduct its $14,934,745 capital loss in Textron's 1987 taxable year.  We reverse.

Textron is the common parent of an affiliated group of corporations within the meaning of I.R.C. § 1504(a).  The general rule of I.R.C. § 1001 requires consolidated groups to recognize gain or loss upon an exchange of property.  However, if three listed conditions are met, Treas. Reg. § 1.1502-14(d)(4)(i) mandates the deferral of a capital loss, thus disallowing a deduction.  The third condition, the only one presently contested, provides a loss shall be deferred if the obligation underlying the loss "has never been held by a nonmember."  Treas. Reg. § 1.1502-14(d)(4)(i)(c).  Because in this case the obligation underlying the capital loss was held by a nonmember, Paul Revere, we hold Textron is permitted to deduct $14,934,745 in its 1987 taxable year.

## I.  Background

Before joining the Textron group in 1985, Avco Corporation (Avco) was the common parent of an affiliated group of corporations within the meaning of I.R.C. § 1504(a).  In February 1967, Paul Revere, at the time a corporation unrelated to Textron, purchased four million shares of Avco stock for $135 million.  At the time, Avco's remaining shares were publicly traded.  In

-2-

November 1967, Avco acquired all of the stock of Paul Revere, making Paul Revere part of the Avco consolidated return group. Paul Revere continued to hold the Avco shares it had purchased in February 1967.

On December 1, 1977, Avco redeemed all of its stock held by Paul Revere. Paul Revere realized a $55,836,713[1] loss on the redemption because Avco's stock had declined in value over the ten years Paul Revere held it. As part of the redemption, Avco gave Paul Revere, among other things, a promissory note with a face value of $40,419,005. As provided under Treas. Reg. § 1.1502-14(b)(1)(iii), Paul Revere did not recognize any gain or loss on the redemption; instead, it took a $55,353,750 basis in the note, which was allocated to the property received in the stock redemption. The tax treatment of the stock redemption is not in dispute.

In 1984, Textron began to acquire stock in Avco, and by January 9, 1985, Textron had acquired over 80% of Avco's outstanding stock. As a result, the Avco consolidated return group terminated. For the first time, all former members of the Avco group, including its wholly-owned subsidiary Paul Revere, became members of the Textron group.

---

[1]The Tax Court held Paul Revere realized a $55,353,750 loss. On appeal, the parties agree the company's actual loss was $55,836,713.

In November 1987, Avco redeemed the note from Paul Revere for $40,419,005 in cash. This was $14,934,745 less than Paul Revere's basis in that obligation. Paul Revere was liquidated into Avco in a tax-free liquidation, authorized under I.R.C. § 322, on December 30, 1987. In its consolidated tax return for the 1987 tax year, Textron, as parent of the Textron group, claimed a $14,934,745 long-term capital loss on the note redemption.

Commissioner disallowed the claimed loss. Textron timely filed a petition in Tax Court for redetermination of the deficiency and the case was heard on stipulated facts.

I.R.C. § 1001 generally requires gain or loss to be recognized upon an exchange of property. See I.R.C. § 1001(b) ("The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."); I.R.C. § 1001(c) ("the entire amount of the gain or loss, determined under this section, on the sale or exchange of property shall be recognized"). Additional provisions of the Internal Revenue Code recognize the same general principle. I.R.C. § 1271(a)(1) states, "[a]mounts received by the holder on retirement of any debt instrument shall be considered amounts received in exchange therefore," and I.R.C. § 1001(a) provides, "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis . . . and the

loss shall be the excess of the adjusted basis . . . over the amount realized." Unless overridden by the consolidated return regulations, these provisions would allow Textron to deduct the capital loss realized by Paul Revere when Avco redeemed the note.

The consolidated return regulations set forth rules governing the tax liability of an affiliated group of corporations filing a consolidated federal income tax return. During the taxable year at issue in this case, the 1966 Regulations, substantially rewritten in 1995, were in effect.

On appeal, as it did before the Tax Court, Commissioner argues Treas. Reg. § 1.1502-14(d)(4)(i), part of the 1966 Regulations, disallows Textron's deduction of the $14,934,745 loss. Treas. Reg. § 1.1502-14(d)(4)(i) provides that if three conditions are satisfied, gain or loss that otherwise could be deducted under I.R.C. § 1001 on a note redemption is deferred:

Exception for obligations acquired in tax-free exchanges.

(i) If --

(a) A member received an obligation of another member in exchange for property,
(b) The basis of the obligation was determined in whole or in part by reference to the basis of the property exchanged, and
(c) The obligation has never been held by a nonmember,

then any gain or loss of any member on redemption or cancellation of such obligation shall be deferred, and subparagraph (3) of this paragraph shall not apply.

-5-

At issue in this case is the applicability of Treas. Reg. § 1.1502-14(d)(4)(i)(c), that an "obligation has never been held by a nonmember."  Before the Tax Court and again on appeal, Textron argues subsection (c) was not met because the Avco note previously was held by Paul Revere, a nonmember of the Textron group.  Noting the regulation does not specify how or when a corporation's status as a member or nonmember is determined, the court held Paul Revere's membership in the Textron group in 1987, when the note was redeemed, rendered condition (c) unsatisfied:

> The salient fact is that Paul Revere, having held the note from the date of its issuance, was a member of the Textron group when the note was redeemed. . . . For purposes of section 1.1502-14(d)(4)(i), Income Tax Regs., we determine the status of Paul Revere as a member or "nonmember" of the Textron consolidated group at the time of redemption of the note.  We interpret the word "nonmember" in that provision of the regulations as applying to cases where a member of the consolidated group cancels or redeems an obligation that is held, or was held, by a corporation that is a nonmember at the time of cancellation or redemption.

Citing 3 Boris I. Bittker & Lawrence Lokken, <u>Federal Taxation of Income, Estates and Gifts, the Tax Regulations</u> (2d ed. 1991), the Tax Court observed:

> [t]he consolidated return regulations are built on the premise that members of a consolidated group are a single economic entity with regard to intercompany transactions and distributions and that resulting gains or losses are given effect only when the transferred property, or stock

-6-

of the transacting member, leaves the consolidated group.

At the time Avco redeemed its note from Paul Revere, both were members of the Textron group, and remained so until the end of the 1987 taxable year. Thus, reasoned the court, there were no "dealings with outsiders" that would entitle Textron to take into account the loss from this intercompany transaction. The court characterized Textron's position as "incongruous with the purpose of the consolidated return regulations" and as "lead[ing] to an unreasonable result."

The Tax Court bolstered its holding by comparing the result in this case with a hypothetical all-cash redemption, i.e., had Avco redeemed Paul Revere's stock in 1977 for cash rather than a note. In the all-cash model, Paul Revere's loss on the redemption would still have been deferred even though Avco and Paul Revere were then members of the Textron rather than the Avco group. The court concluded it would be illogical to defer gains and losses on all-cash redemptions but recognize them where the consideration, in part, was a note.

The remaining issues in the case were resolved, and the parties agreed upon the resulting tax liabilities. With respect to the Tax Court's interpretation of Treas. Reg. § 1.1502-14(d)(4)(i)(c), Textron timely appealed.

## II. **Arguments on Appeal**

We review de novo the legal question whether the Tax Court correctly interpreted the consolidated return regulations for 1966, including Treas. Reg. § 1.1502-14(d)(4)(i). Medchem (P.R.), Inc. v. Comm'r, 295 F.3d 118, 122 (1st Cir. 2002). The facts in this case are not disputed.

Although the result advanced by the Tax Court and now by Commissioner on appeal is the same, their rationales differ. The court reasoned the key moment in ascertaining membership status was the note redemption. Because Paul Revere then was a member, reasoned the court, Treas. Reg. § 1.1502-14(d)(4)(i)(c) is unmet. Rather than adopt this "single point" theory of membership determination, Commissioner offers a plain language reading of Treas. Reg. § 1.1502-14(d)(4)(i), looking to the relationship between relevant parties. Because Paul Revere and Avco, the two critical entities in the note redemption, at all times remained members of the same group, neither was ever a "nonmember" of Textron. Commissioner had made the same argument in the proceedings below, but the court did not adopt it.

Commissioner's interpretation of the regulation is premised upon its opening phrase, "a member received an obligation from another member in exchange for property." Commissioner argues this must refer to Paul Revere and Avco while they were both "members" of the Avco group. Treas. Reg. § 1.1502-14(d)(4)(i)(a).

-8-

Treas. Reg. § 1.1502-14(b)(1), stating, "no gain or loss shall be recognized on the receipt, during a consolidated year, by one *member* of property (including cash) distributed in cancellation or redemption of all or part of the stock of another *member*," supports this view. Commissioner gains further support from the flush language of Treas. Reg. § 1.1502-14(d)(4)(i), "any gain or loss of any member on redemption or cancellation of such obligation shall be deferred." Given the timing of the note redemption, the only plausible reference of the word "member" is to Paul Revere's loss upon having its Avco note redeemed by Avco at a time when both had become members of the Textron group.

Most importantly, according to Commissioner, subsection (c), "the obligation has never been held by a nonmember," refers to an obligation that was held at some time by an entity that was not a member of the same affiliated group as the other party to the transaction. Treas. Reg. § 1.1502-14(d)(4)(i)(c). Assigning any other meaning to "nonmember" ignores the use of the term "member" in the remaining clauses of the regulation. Because Paul Revere and Avco were at all times members of the same affiliated group, the note was Paul Revere's built-in loss, not Textron's.

The purpose of the consolidated return regulations, Commissioner stresses, is "to reduce the effect that the separate existence of affiliated corporations has on the aggregate tax liability of the group." Andrew J. Dubroff, et al., <u>Federal Income</u>

<u>Taxation of Corporations Filing Consolidated Returns</u> § 1.01 (2d ed. 2002) [hereinafter Dubroff]. Accordingly, gains or losses with respect to obligations existing among group members are deferred so long as the parties to the obligation remain in that same group. Applying its interpretation of Treas. Reg. § 1.1502-14(d)(4)(i) to this case, Commissioner insists, fulfills the objective of the consolidated return regulations.

Textron offers a more direct plain meaning interpretation of Treas. Reg. § 1.1502-14(d)(4)(i). The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written. <u>See</u>, <u>e.g.</u>, <u>Comm'r</u> v. <u>Soliman</u>, 506 U.S. 168, 174 (1993) ("In interpreting the words in a revenue Act, we look to the 'ordinary, everyday senses' of the words.") (citations omitted); <u>United States</u> v. <u>Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241-42 (1989) (plain meaning should be conclusive except in "'rare cases' [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters") (citation omitted); <u>Gitlitz</u> v. <u>Comm'r</u>, 531 U.S. 206, 220 (2001) (reversing the Tax Court and the Tenth Circuit's interpretation of an "item of income" within I.R.C. § 1366(a)(1)(A), reasoning, "[b]ecause the Code's plain text permits the taxpayers here to receive these benefits, we need not

-10-

address [the potential double windfall] policy concern"). So too has this Court. See, e.g., Plymouth Savings Bank v. IRS, 187 F.3d 203, 209 (1st Cir. 1999) (based "on a plain reading of the regulations," stating, "[t]he IRS, which promulgates these regulations, had ample opportunity to rewrite them to better suit its desired interpretation of the statute").

Textron notes that notwithstanding the opinion in this case, the Tax Court also generally endorses a plain meaning approach to the 1966 Regulations. In Woods Inv. Co. v. Comm'r, the court applied the regulations as written, despite Commissioner's request to disregard the precise language of the consolidated return regulations in order to harmonize conflicting rules. 85 T.C. 274 (1985). Expressly reaffirming Woods, in CSI Hydrostatic Testers, Inc. v. Comm'r, the court stated, "we will apply the consolidated return regulations and the Code as written," because a result consistent with the plain meaning of the regulations but contrary to what the Commissioner believed was their purpose "is a problem of [the Commissioner's] own making." 103 T.C. 398, 411 (1994).

This Court, Textron reminds, disregards plain language only in rare circumstances, and under a much more stringent standard than that adopted by the Tax Court. In Sullivan v. Comm'r, we observed, "[c]ourts will only look behind statutory language in the rare case where a literal reading must be shunned

because it would produce an absurd outcome."  992 F.2d 1249, 1252 (1st Cir. 1993).

Treas. Reg § 1.1502-14(d)(4)(i)(c) provides that the "obligation" -- here, the promissory note -- must "never" have been held by a "nonmember."  Paul Revere acquired the note in 1977, when it was not a member of the Textron consolidated return group.  Paul Revere first became a member of the Textron group in 1985.  Thus, Textron argues, because the note was held by a nonmember of the Textron group from 1977 through 1985, the condition plainly is not met.

"Non" is defined by Webster's dictionary as "not: other than: reverse of: absence of;" and "member" by Treas. Reg. § 1.1502-1(b) as "a corporation (including the common parent) which is included within such [consolidated return] group."  Webster's Ninth New Collegiate Dictionary 802 (1991).  Citing this definition, Textron urges a "nonmember" is an entity that has been "other than" a member of the consolidated return group (in this case, Textron, because Textron's consolidated return group's income is at issue).  Paul Revere was "other than" a member of the Textron group from 1977, when it acquired the note, until 1985.

"Never" is defined by Webster's dictionary as "not ever: at no time."  Textron asserts Paul Revere cannot be characterized as "at no time" a nonmember of Textron, because it was a nonmember from 1977 through 1985.  Webster's Ninth New Collegiate Dictionary

-12-

796 (1991).  Treas. Reg § 1.1502-14(d)(4)(i)(c) does not limit the definition of nonmembership to a specific moment in time.

According to Textron, the grammar of Treas. Reg § 1.1502-14(d)(4)(i)(c) complements its plain language interpretation.  The present perfect tense "is used to express action (or to help make a statement about something) occurring at no definite time in the past."  John Warringer, English Composition and Grammar 568-69 (Benchmark ed. 1988).  The use of the present perfect tense in the regulation means there is no particular moment when nonmember status is determined.  Instead, the requirement in subsection (c) will not be met if the inter-company obligation was held by a nonmember at *any* time from its creation to its redemption or cancellation.

Rather than expressing a singular purpose, Textron stresses the 1966 Regulations are a series of mechanical rules having a "fundamental mechanical approach."  Notice 94-49, 1994-1 C.B. 358, 361.  The 1995 regulations, by contrast, are meant to be "flexible" and "adopt uniform rules of general application."  Notice 94-49 at 361.  See also Dubroff at § 31.02[1], [5] (describing the 1966 Regulations as "detailed, mechanical provisions" requiring a "mechanical approach").

Textron maintains the generalizations of the Bittker & Lokken treatise, like all other scholarly expositions, cannot override plain language.  Statutory language "is the most

-13-

persuasive evidence of the statutory purpose" and should not have been avoided by the Tax Court in this case. Woodral v. Comm'r, 112 T.C. 19, 22 (1999).

Finally, Textron argues, rather than supporting the disallowance of a deduction in this case, the hypothetical cash-redemption posited by the Tax Court evinces poor drafting of the regulation's cash redemption provisions. Moreover, the court's conclusion disregards a tenet of tax law, that taxpayers like Paul Revere may structure their transactions so that taxes are as low as possible. See, e.g., Sawtell v. Comm'r, 82 F.2d 221, 222 (1st Cir. 1936) ("Nothing is better settled than that persons are free to arrange their affairs to the best advantage for themselves under the law as it stands.").

### III.  Analysis

We agree with Textron and hold Treas. Reg. § 1.1502-14(d)(4)(i) does not operate to defer the claimed deduction. A fundamental precept of tax law is that deductions from taxable income are based on genuine economic losses and expenditures. See, e.g., I.R.C. § 162 (permitting deductions for "all the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business"); I.R.C. § 165 (permitting deductions for losses, such as losses incurred as a result of theft, casualties, and worthless securities). Paul Revere incurred a true capital loss, and we permit Textron, its parent, to deduct accordingly.

-14-

Commissioner reads "member" and "nonmember" differently in each portion of Treas. Reg. § 1.1502-14(d)(4)(i). In subsection (a), the term "member" would refer to the terminated Avco group; in (c), "nonmember" would mean "an entity that was not a member of the same affiliated group as the other party to the transaction;" and in the concluding phrase of the regulation, "member" would signify Textron. These variable definitions of "member" and "nonmember" ignore "the basic canon of statutory construction that identical terms within an Act bear the same meaning." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479 (1992).

Commissioner's reading also fails on technical analysis grounds. First, its claim that subsection (a) of Treas. Reg. § 1.1502-14(d)(4)(i) must refer to Avco and Paul Revere ignores the fact that neither the words, context, nor history of the provision suggests it refers to anything other than membership in the consolidated group whose tax liability is contested. Second, the argument that the flush language of the regulation must refer to Paul Revere's loss upon having its Avco note redeemed by Avco when both had become members of the Textron group bolsters Textron's, rather than Commissioner's, position. Reading the terms in the statute consistently, the fact that "member" in the flush language refers to the Textron group reinforces the notion that "member" throughout Treas. Reg. § 1.1502-14(d)(4)(i) signifies membership in the consolidated group whose tax is at issue. Accordingly,

-15-

"nonmembership" means nonmembership in the consolidated return group whose tax is contested.

Third, Commissioner's reading of subsection (c) of Treas. Reg. § 1.1502-14(d)(4)(i) fails. Viewing Treas. Reg. § 1.1502-14 as a whole, if the term "member" did not refer to the taxpayer's consolidated group, the regulation would not be inconsistent and illogical. For instance, if the term "member" did not refer to the taxpayer's consolidated group, the phrase in Treas. Reg. § 1.1502-14(d)(1), stating a gain or loss is deferred "to a member . . . [in respect] of a sale or other disposition (other than a redemption or cancellation) of an obligation of another member," would not make sense, because disposition of an obligation not involving a member of the taxpayer's consolidated group would not be an intercompany transaction. When the consolidated return regulations use the term "member" in reference to a group other than taxpayer's, they do so explicitly. See, e.g., Treas. Reg. § 1.1502-47(d)(12)(iv) (providing that in determining whether certain insurance companies are eligible to be included in a consolidated group, "an ineligible corporation includes one whose stock was acquired from outside the group at any time during the base period or one which was a member of a different group").

Commissioner does not cite regulatory history or dictionary definitions in support of its interpretation of Treas. Reg. § 1502-14(d)(4)(i). Further, its attempts to support its

-16-

conclusions through precedent are unavailing.  In IU Int'l Corp. v. United States, 116 F.3d 1461 (Fed. Cir. 1997), the Federal Circuit, while noting its ruling was consistent with the purpose of corporate spin-off tax regulations, did not, as Commissioner avers, disavow the principle espoused in Woods and CSI, namely that courts apply the tax laws as written.  Instead, the IU court refused to permit the taxpayer an increased basis in the spun-off subsidiary because "the statutes and regulations, as written, provide no authority for IU's claimed adjustment."  Id. at 1465.  Notably, referring to Woods and CSI, the court refused to "question the integrity of the principle applied in these cases."  Id.  Instead, "such a complex fabric of interrelated provisions as the Internal Revenue Code and its related regulations demands strict adherence lest courts find themselves unwittingly choosing preferred economic outcomes rather than defined legal results under the Code."  Id.

Commissioner cites Idaho First Nat'l Bank v. Comm'r, 997 F.2d 1285 (9th Cir. 1993).  In Idaho, the taxpayer sought to take a deduction based on a technical modification to the regulation. Characterizing the modification as "simply a technical correction intended to eliminate language considered redundant," id. at 1289, the Ninth Circuit refused to afford the taxpayer relief.  Idaho thus bears little similarity to the present case.

Commissioner's and the Tax Court's reference to the supposed harmony between the no-deduction conclusion and a

-17-

singular, overarching purpose of the consolidated return system likewise fails.  Indeed, the Dubroff treatise, cited by both the court and Commissioner, recognizes, "[the consolidated return regulation's] hybrid system of a single and separate entity treatment represents a compromise that has evolved over time." Dubroff at § 1.01.  Moreover, scholarly expositions do not suffice to overcome plain statutory language.  See, e.g., Sullivan, 992 F.2d at 1252.

## IV. Conclusion

Deductions from taxable income are based on true capital loss.  Paul Revere incurred a genuine economic loss of $14,934,745, which Textron cannot recognize under the Tax Court's decision. Accordingly, the plain meaning of Treas. Reg. § 1.1502-14(d)(4)(i) must prevail.

**REVERSED.**