PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

Rex T. Gilbert, Jr.; Daniela L. Gilbert,

       *Plaintiffs-Appellants,*

       v.

Residential Funding LLC; GMAC Mortgage LLC; Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Incorporated,

       *Defendants-Appellees,*

       and

David A. Simpson, Substitute Trustee,

       *Trustee.*

No. 10-2295

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Dever III, District Judge.
(4:09-cv-00181-D)

Argued: January 24, 2012

Decided: May 3, 2012

Before TRAXLER, Chief Judge, FLOYD, Circuit Judge,
and J. Michelle CHILDS, United States District Judge for
the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Floyd wrote the opinion, in which Chief Judge Traxler and Judge Childs joined.

## COUNSEL

**ARGUED:** Katherine Suzanne Parker-Lowe, Ocracoke, North Carolina, for Appellants. Marc James Ayers, BRADLEY ARANT BOULT CUMMINGS, LLP, Birmingham, Alabama, for Appellees. **ON BRIEF:** Nicholas J. Voelker, BRADLEY ARANT BOULT CUMMINGS, LLP, Charlotte, North Carolina, Jonathan M. Hooks, BRADLEY ARANT BOULT CUMMINGS, LLP, Birmingham, Alabama, for Appellees.

## OPINION

FLOYD, Circuit Judge:

Rex and Daniela Gilbert appeal the district court's dismissal of their claim that Deutsche Bank Trust Company Americas (Deutsche), as trustee for Residential Accredit Loans, Inc. (RAL); David A. Simpson (Simpson), substitute trustee; Residential Funding LLC (RFL); and GMAC Mortgage LLC (GMAC) violated various consumer protection laws in connection with a mortgage the Gilberts secured on their home, located at 134 West End Road, Ocracoke, North Carolina (the subject property). Specifically, the Gilberts allege that they are entitled to relief on account of violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667(f), and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 (previously codified at 12 C.F.R. § 226); North Carolina usury law, N.C. Gen. Stat. § 24; the North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA), *id.* § 75-1.1; and North Carolina's Prohibited Acts by Debt Col-

lectors statute, *id.* § 75-50. The Gilberts also claim a breach of contract and that Deutsche lacks the authority to enforce the loan.

Appellees filed a motion to dismiss, which the district court granted. The Gilberts timely appealed. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings.

I.

We review the district court's decision granting a motion to dismiss de novo, and we view the facts in the light most favorable to the non-prevailing party. *See Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 504 (4th Cir. 1999).

On May 5, 2006, Rex Gilbert executed an adjustable rate note with First National Arizona to refinance the existing lien on the subject property. Pursuant to the terms of the note, Mr. Gilbert agreed to pay a principal amount of $525,000, plus interest to the bank. The Gilberts executed a deed of trust on the subject property to secure the note. As a part of the transaction, First National Arizona provided several disclosures, including a "Truth in Lending Disclosure Statement," a "Notice of Right to Cancel," a "Variable Rate Mortgage Program Disclosure," a "HUD-1 Settlement Statement," and a "First Payment Letter."

Thereafter, according to the district court, First National Arizona transferred its interest in the Gilberts' mortgage to First National Bank of Nevada, First National Bank of Nevada transferred its interest in the mortgage to RFL, and RFL sold its interest to Deutsche, as the trustee for RAL. *Gilbert v. Deutsche Bank Trust Co. Ams.*, No. 09-CV-181-D, 2010 WL 2696763, at *1 (E.D.N.C. July 7, 2010). Thus, the district court stated, Deutsche, as the trustee for RAL, currently owns and holds the note and deed of trust on the subject

property. *Id.* RFC is the master servicer and GMAC is the subservicer. *Id.* at *2.

The Gilberts defaulted on the loan in 2008. Subsequently, Deutsche chose Simpson as the substitute trustee of the deed of trust. *Id.* On March 12, 2009, Simpson filed a foreclosure action against the Gilberts in the Hyde County Superior Court.

The Gilberts' counsel wrote a letter to GMAC dated April 5, 2009, in which she alleged several violations of TILA, provided notice that the Gilberts were rescinding their mortgage transaction, and requested that GMAC cancel its security interest in the subject property and return all consideration paid by the Gilberts. In a letter dated April 14, 2009, counsel for GMAC responded that GMAC had reviewed the Gilberts' file and found "no basis to conclude that there were any material disclosure errors that would give rise to an extended right of rescission." As such, counsel for GMAC stated that they would not rescind the transaction.

On June 2, 2009, the Clerk of the Hyde County Superior Court conducted a foreclosure hearing, after which she entered a June 17, 2009, order allowing Simpson to proceed with the foreclosure. According to the order, the Clerk found that Deutsche was the holder of the subject note and deed of trust and that the note evidenced a valid debt. The Gilberts appealed to the Hyde County Superior Court.

Following a de novo hearing on the matter on August 18, 2009, the superior court allowed the foreclosure proceeding to go forward. In doing so, the court relied in part on an affidavit signed by Jeffrey Stephan, a signing officer for GMAC, certifying the validity of the indebtedness pursuant to the note as well as Deutsche's status as the current owner and holder of the note. The Gilberts appealed that decision to the North Carolina Court of Appeals.

On September 14, 2009, while their appeal was pending, the Gilberts filed suit in the Hyde County Superior Court against Appellees seeking, among other things, to enjoin the mortgage foreclosure sale and to rescind their May 5, 2006, loan. They alleged violations of TILA by Appellees. The Gilberts also claimed that Appellees violated North Carolina usury law, engaged in unfair and deceptive trade practices, engaged in prohibited debt collection acts, and breached the mortgage contract. The Gilberts further maintained that Deutsche was without authority to enforce the note because of a defect in the allonge, which granted Deutsche an interest in the note.

Appellees removed the Gilberts' suit to the district court and subsequently filed a motion to dismiss the complaint, which the district court granted. This appeal, in which the Gilberts contest the district court's dismissal of their TILA, usury, and NCUDTPA claims, followed. They also assign error to the district court's determination that res judicata barred them from raising claims related to the endorsement on the allonge to the note, as well as the district court's denial of their motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

After becoming aware that Stephan had engaged in improper affidavit practices in unrelated cases, the Gilberts filed with the district court a motion for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Rule 12.1 of the Federal Rules of Appellate Procedure. In light of this new evidence, they requested that the district court file an order indicating whether it would be inclined to relieve them of its prior order dismissing their claims and its denial of their Rule 59(e) motion.

On May 3, 2011, the North Carolina Court of Appeals reversed the superior court's decision to allow Simpson to proceed with a foreclosure sale, finding that "the record is lacking of competent evidence sufficient to support that

[Deutsche] is the owner and holder of Mr. Gilbert's note and deed of trust." *In re Simpson*, 711 S.E.2d 165, 175 (N.C. Ct. App. 2011). The court was also troubled by the fact "that [GMAC] was recently found to have submitted a false affidavit by Signing Officer Jeffrey Stephan in a motion for summary judgment against a mortgagor in the United States District Court of Maine." *Id.* at 173 n.2. The Gilberts subsequently supplemented their Rule 60(b) motion with a copy of the *Simpson* opinion.

On June 15, 2011, the district court filed an order stating that "should the Fourth Circuit return jurisdiction to this court, the court would grant the [Rule 60(b)] motion, dismiss the federal claims for the reasons stated in the July 7, 2010[,] order [dismissing all of the Gilberts' claims], and remand all state-law claims to Hyde County Superior Court." *Gilbert v. Deutsche Bank Trust Co. Ams.*, No. 4:09-CV-181-D (E.D.N.C. June 15, 2011). In light of this order, the Gilberts filed a motion with us to reverse and remand the case to the district court. We denied the motion. Accordingly, we now undertake a de novo review of each of the Gilberts' assignments of error. *See Chaudhry*, 186 F.3d at 504.

## II.

## A.

The Gilberts first argue that the district court erred in dismissing their TILA claim on the basis that they had failed to exercise their extended right to rescind in a timely manner.

In adopting TILA, Congress declared that "[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). As such, TILA requires that a creditor make certain material disclosures at the time the loan is made. *Id.* § 1638(a). If the

creditor fails to comply with this mandate, the borrower has the right to rescind up to three years after the transaction. *Id.* § 1635(f).

The Gilberts closed the loan with First National Arizona on May 5, 2006, but they did not file the instant lawsuit until September 14, 2009. They notified GMAC by letter, however, that they were exercising their right to rescind in April 2009. So, although the Gilberts did not file this lawsuit within three years of closing the loan, they did notify GMAC that they were exercising their right to rescind during that three-year time period.

There is a split of authority as to whether the borrower must file a lawsuit within three years after the consummation of a loan transaction to exercise her right to rescind, or whether the borrower need only assert the right to rescind through a written notice within the three-year period. For example, in *McOmie-Gray v. Bank of America Home Loans*, 667 F.3d 1325 (9th Cir. 2012)**,** the Ninth Circuit held that "rescission suits must be brought within three years from the consummation of the loan, regardless [of] whether notice of rescission is delivered within that three-year period." *Id.* at 1328. But, in *In re Hunter*, 400 B.R. 651 (Bankr. N.D. Ill. 2009), the bankruptcy court held that "TILA gives a consumer the right to rescind a credit transaction simply by notifying the creditor, within a specific period of time, that she intends to do so." *Id.* at 659.

The district court cited *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815 (4th Cir. 2007), for the proposition that the Gilberts were required to file suit to exercise their right of rescission. Thus, in that the Gilberts failed to file suit until after the three years passed, the district court dismissed their rescission claim. As explained below, however, we are convinced that the Gilberts exercised their right to rescind when they sent their April 5, 2009, letter to GMAC, alleging several violations of TILA and Regulation Z, and providing

notice of their rescission of the mortgage transaction. More-over, we do not think that our prior decision in *Shelton* compels a contrary conclusion. Further, we disagree with the Ninth Circuit that a borrower must file a lawsuit within the three-year time period to exercise her right to rescind, as opposed simply to notifying the creditor.

We begin, as we must, with the plain meaning of the statute. "The starting point for any issue of statutory interpretation . . . is the language of the statute itself." *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

In the same way, our interpretation of regulations begins with their text. *Textron, Inc. v. Comm'r*, 336 F.3d 26, 31 (1st Cir. 2003). "The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." *Id.* In most cases, a textual reading will be dispositive. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989). Furthermore, "absent some obvious repugnance to the statute, the . . . regulation implementing [TILA] should be accepted by the courts." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981).

Here, we are primarily concerned with just one statute and one regulation. Section 1635(f) provides, in relevant part, the following:

> An obligor's right of rescission shall expire three years after the date of consummation of the transac-

tion or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f). Its implementing regulation, Regulation Z, states as follows:

> To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

12 C.F.R. § 1026.23(a)(2). Taking the plain meaning of these texts, and assuming that the words say what they mean and mean what they say, we come to the conclusion that the Gilberts exercised their right to rescind with the April 5, 2009, letter. Simply stated, neither 15 U.S.C. § 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and we refuse to graft such a requirement upon them.

But what about the *Shelton* case that the district court relied upon in reaching a different conclusion? There, the creditor filed an action seeking a declaratory judgment that the processing of the borrowers' home refinancing loan complied with TILA. 486 F.3d at 817. The borrowers counterclaimed, requesting damages for violations of TILA. *Id.* They also sought rescission and a declaration by the district court that the defendant had forfeited the loan principal pursuant to TILA. *Id.*

We stated that the "unilateral notification of cancellation does not automatically void the loan contract." *Id.* at 821. "[O]therwise, a borrower could get out from under a secured

loan simply by claiming TILA violations, whether or not the lender had actually committed any." *Id.* (quoting *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003)) (internal quotation marks omitted).

We must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in fact, been completed and the contract voided. The former is the concern of § 1635(f) and Regulation Z, and a borrower exercises her right of rescission by merely communicating in writing to her creditor her intention to rescind. To complete the rescission and void the contract, however, more is required. Either the creditor must "acknowledge[ ] that the right of rescission is available" and the parties must unwind the transaction amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind. *Shelton*, 486 F.3d at 821 (quoting *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)) (internal quotation marks omitted).

At this stage of the litigation, we are not concerned with whether the contract has been effectively voided. A court must make a determination on the merits as to whether that should occur. Instead, the question presented here is whether the Gilberts exercised their right to rescind with the April 5, 2009, letter. Based on the plain meaning of the applicable statute and regulation, we answer that question in the affirmative.

Appellees' reliance on *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), is misplaced. The *Beach* Court did not address the proper method of exercising a right to rescind or the timely exercise of that right. Instead, in *Beach*, the Court looked at "whether § 1635(f) is a statute of limitation, that is, 'whether [it] operates, with the lapse of time, to extinguish the right which is the foundation for the claim' or 'merely to bar the remedy for its enforcement.'" *Id.* at 416 (alteration in orig-

inal) (quoting *Midstate Horticultural Co. v. Pa. R.R. Co.*, 320 U.S. 356, 358-59 (1943)). The Court stated the following:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. . . . It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.

*Id.* at 417. In other words, the three-year limitation in 15 U.S.C. § 1635 concerns the extinguishment of the right of rescission and does not require borrowers to file a claim for the invocation of that right. Thus, that the Gilberts failed to seek enforcement of their right to rescind within the three years does nothing to take away from the fact that they exercised their right of rescission within that time period.

## B.

Next, the Gilberts argue that the district court's decision to dismiss their claim for rescission on the basis that Appellees are assignees and not creditors was improper. Appellees do not appear to disagree.

Section 1641(c) states, "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). The district court's holding to the contrary is reversible error.

## C.

According to the Gilberts, the district court also erred in deciding that all of their money damages under TILA are barred by the one-year statute of limitations. We agree.

Section 1640(e) provides a one-year statute of limitations for the filing of a suit once a violation of TILA has occurred. *Id.* ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). The alleged TILA disclosure violations occurred on May 5, 2006, but the Gilberts did not file suit until September 14, 2009. Thus, the statute of limitations for those violations has long past and the district court was correct in dismissing those claims.

But, it appears that the Gilberts' TILA claim regarding Appellees' refusal to honor their right to rescind was timely filed. The Gilberts sent a letter to GMAC pursuant to 15 U.S.C. § 1635(f) and Regulation Z on April 5, 2009, indicating that they were exercising their right to rescind the mortgage loan. The creditor then had twenty days to respond. *Id.* § 1635(b). The alleged violation of TILA occurred when GMAC sent the April 14, 2009, letter indicating that it would not rescind the loan transaction. To maintain an action for damages pursuant to TILA**,** the action had to be filed "within one year from the date of the occurrence of the violation." *Id.* § 1640(e). Inasmuch as the Gilberts filed this lawsuit on September 14, 2009, their TILA claim for damages for GMAC's refusal to honor their right to rescind is not time barred.

III.

Next, the Gilberts challenge the district court's dismissal of their usury claim. Appellees make two arguments as to why the district court did not err. We are convinced by neither.

First, Appellees urge that the Gilberts' usury claim is not ripe for adjudication. According to Appellees, to the extent that the Gilberts might be subject to pay usurious interest, given the manner in which the payment schedule is configured, they have not yet been required to pay the alleged usurious interest rate. The Gilberts counter that because the

payments that they made were interest only, they were paying usurious interest with each payment. As such, according to the Gilberts, their claim is ripe. Construing the Gilberts' allegations as true, as we must at this stage, we accept that this claim is ripe for adjudication.

Second, Appellees maintain that the Gilberts failed to plead a usury claim. According to Appellees, parties have the right to pay any interest rate to which they agree. Therefore, claim Appellees, "to survive a motion to dismiss, the Gilberts would have to allege that they never agreed to the interest rates imposed by the loan documents. On this they are silent." We disagree.

In their complaint, the Gilberts allege that Appellees "charged and collected interest in excess of the agreed rate or limits set forth in Chapter 24 of the North Carolina General Statutes, including without limitation, the charge, collection and imposition of hidden finance charges contained in the erroneous payment schedule set forth in the Truth in [L]ending disclosure statement."

The elements of a usury claim are as follows:

> a loan or forbearance of the collection of money, an understanding that the money owed will be paid, payment or an agreement to pay interest at a rate greater than allowed by law, and the lender's corrupt intent to receive more in interest than the legal rate permits for use of the money loaned.

*Swindell v. Fed. Nat'l Mortg. Ass'n*, 409 S.E.2d 892, 895 (N.C. 1991). "Where the lender intentionally charges the borrower a greater rate of interest than the law allows and his purpose is clearly revealed on the face of the instrument, a corrupt intent to violate the usury law on the part of the lender is shown." *Id.* at 895–96 (quoting *Kessing v. Nat'l Mortg.*

*Corp.*, 180 S.E.2d 823, 827 (1971)) (internal quotation marks omitted).

No one disputes that the Gilberts have established the first two elements. We hold that the Gilberts have adequately pled elements three and four as well. Specifically, the Gilberts contend that there was a loan that was to be repaid; pursuant to the terms of the loan, they were charged an agreed upon or stated interest rate; under the repayment schedule for the loan, they were charged a higher interest rate than agreed upon or allowed by Chapter 24 of the North Carolina General Statutes; when they paid a higher interest rate, Appellees collected more than the agreed upon or allowed interest rate; and Appellees charged the higher rate with a corrupt intent. Consequently, they have properly pled a usury claim pursuant to *Swindell*.

Although not argued by the parties or referenced below, on remand, the district court should consider whether North Carolina General Statute Section 24-1.1A(a)(1) ("Where the principal amount is ten thousand dollars ($10,000) or more the parties may contract for the payment of interest as agreed upon by the parties . . . ."), Section 24-9(a)(3) ("'Exempt loan' means a loan in which . . . [t]he loan amount is three hundred thousand ($300,000) or more . . . ."), and Section 24-9(b) ("A claim or defense of usury is prohibited in an exempt loan transaction.") are applicable.

## IV.

The Gilberts also urge that the district court erred in granting Appellees' Rule 12(b)(6) motion as to their NCUDTPA cause of action. To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must demonstrate the following: (1) the defendant committed an unfair or deceptive trade practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Spartan Leasing v. Pollard*, 400 S.E.2d 476, 482

(N.C. Ct. App. 1991). An act is unfair when it is unethical or unscrupulous, and it is deceptive if it tends to deceive. *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981).

In their allegations concerning their NCUDTPA claims, the Gilberts make the following complaints: usury law violations, TILA violations, and "falsely representing to be the owner and holder of [the Gilberts'] note and deed of trust." Thus, they argue the following:

> These acts and omissions proximately damaged plaintiffs, are in and affecting commerce, violate public policy, have the capacity to deceive an ordinary consumer, are unscrupulous, immoral, and oppressive, and constitute unfair and/or deceptive trade practices under [North Carolina General Statute] § 75-1.1, thereby entitling plaintiffs to three times their actual damages plus a reasonable attorney's fee pursuant to [North Carolina General Statute] §§ 75-16 and 75-16.1.

Some of the Gilberts' allegations concern the actions of the Appellees, and some concern the actions of the original creditor, who is not party to this lawsuit. And, although some claims in this lawsuit can be assigned, "unfair practice claims pursuant to . . . § 75-1.1 cannot be assigned," *Investors Title Ins. Co. v. Herzig*, 413 S.E.2d 268, 271 (N.C. 1992). Thus, the district court properly dismissed those portions of the claims. "[A] violation of a consumer protection statute may, in some instances, constitute a *per se* violation of the UDTPA[,]" however. *In re Fifth Third Bank, Nat'l Ass'n-Vill. of Penland Litig.*, 719 S.E.2d 171, 176 (N.C. Ct. App. 2011). Inasmuch as we have held that certain of the Gilberts' TILA and usury claims should go forward, and because we are of the opinion that the Gilberts have set forth a sufficient factual basis for these claims, we hold that their unassigned NCUDTPA claims should be allowed to proceed as well.

V.

The Gilberts also contest the district court's determination that res judicata barred them from raising issues related to the endorsements on the allonge to the note.

As the district court recognized, "[i]ssues that 'the clerk of court decides at a foreclosure hearing as to the validity of the debt and the trustee's right to foreclose are subject to res judicata and cannot be relitigated.'" *Gilbert*, 2010 WL 2696763, at *4 (quoting *Merrill Lynch Bus. Fin. Servs. Inc. v. Cobb*, No. 5:07-CV-129-D, 2008 WL 6155804, at *3 (E.D.N.C. Mar. 18, 2008)). Because the superior court affirmed the Clerk's decision that Deutsche could enforce the note, the district court concluded that res judicata barred the Gilberts from relitigating Deutsche's enforcement authority. *Id.*

But, as noted above, on May 3, 2011, the North Carolina Court of Appeals reversed the state trial court's decision that allowed Simpson to proceed with a foreclosure sale, finding that "the record is lacking of competent evidence sufficient to support that [Deutsche] is the owner and holder of Mr. Gilbert's note and deed of trust." *In re Simpson*, 711 S.E.2d at 175. As such, res judicata no longer bars the Gilberts from litigating whether Deutsche has authority to enforce the note.

VI.

Finally, the Gilberts complain that the district court erred in denying their motion to alter or amend pursuant to Rule 59(e). Because we are reversing and remanding this case to the district court, the argument is moot.

VII.

In light of the foregoing, we affirm in part, reverse in part and remand for further proceedings.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*